A97A2141. TEMPLES v. THE STATE.
(491 SE2d 444)

ELDRIDGE, Judge.

On January 28, 1997, Wesley Temples was indicted for the offenses of habitual violator, driving under the influence of alcohol ("DUI"), no proof of insurance, and failure to wear a seat belt. Temples waived a trial by jury and was tried by the trial court in a bench trial. Following a denial of his motion to suppress, Temples was found guilty. Temples now appeals the denial of his motion to suppress and the resulting convictions.

"In reviewing a trial court's decision on a motion to suppress, its

findings will not be disturbed if there is any evidence to support them; all relevant evidence of record, including evidence introduced at trial, as well as evidence introduced at the motion to suppress hearing, may be considered. *Pless v. State*, 218 Ga. App. 603 (462 SE2d 472) (1995); *State v. Brodie*, 216 Ga. App. 198 (453 SE2d 786) (1995)." *Hill v. State*, 224 Ga. App. 208 (480 SE2d 256) (1997).

In viewing the record before this Court, the evidence shows that on November 16, 1996, at about 11:30 p.m., Officer Jeffery Compton of the City of Columbus Police Department observed Temples operating a gold, 1983 Honda Accord on Apex Road near River Road. Officer Compton observed that Temples and the sole passenger, who was sitting in the front seat, were not wearing their seat belts. Officer Compton testified he was able to see into Temples' vehicle as he passed because of either the light from the street lights or the headlights of the vehicle behind Temples' vehicle. Officer Compton testified that he came within ten feet of Temples' vehicle as he passed by, and his view of the interior of the vehicle was clear and unobstructed.

Based upon his observation, Officer Compton pulled the vehicle over to cite Temples for a seat belt violation pursuant to OCGA § 40-8-76.1.[1] Officer Compton asked Temples for his driver's license, and Temples answered immediately that his license had been revoked. Officer Compton detected an odor of alcohol on Temples' breath and observed that his eyes were bloodshot and watery. Temples could not produce proof of insurance on the vehicle, and his demeanor was "very aggressive and nervous." Officer Compton testified that Temples tested "positive" for the presence of ethyl alcohol on the alcosensor, which he had consented to take. Temples was then placed under arrest for driving under the influence of alcohol.

Officer Compton then checked the computer and learned that Temples had been declared a habitual violator. Officer Compton read Temples his implied consent warnings and took him to the Muscogee County Jail for an Intoxilyzer 5000 breath test. Officer Frank Dunford of the Muscogee County Sheriff's Office performed the Intoxilyzer 5000 breath test on Temples. When Temples arrived at the county jail, Officer Dunford noticed that Temples' speech was slurred, and he could smell alcohol on Temples' breath. The intoxilyzer test indicated that Temples had a blood-alcohol concentration of .085 and .098. Both Officer Compton and Officer Dunford testified that, based on their observations of Temples and their experience as police officers, they believed that Temples was a less safe driver.

In his sole enumeration of error, Temples contends that the trial

---

[1] Prior to trial during the hearing of Temples' motion to suppress, the State stipulated that probable cause for the initial stop was the driver's failure to use his seat belt.

court erred in its failure to grant his motion to suppress. Specifically, Temples argues that, once a police officer makes a traffic stop based solely on a seat belt violation under OCGA § 40-8-76.1, any additional evidence gathered as a result of a reasonable inquiry and investigation pursuant to such stop cannot be used as probable cause to arrest the driver for a violation of any other Code section. We disagree.

OCGA § 40-8-76.1 (b) states that "[e]ach occupant of the front seat of a passenger vehicle shall, while such passenger vehicle is being operated on a public road, street, or highway of this state, be restrained by a seat safety belt. . . ." This Code section has been held to be constitutional and is a valid charge against a person driving without a seat belt. *C. W. Matthews Contracting Co. v. Gover*, 263 Ga. 108 (428 SE2d 796) (1993). The pertinent language of this Code section is found in subsection (f), which states that "[p]robable cause for violation of this Code section shall be based solely upon a law enforcement officer's clear and unobstructed view of a person not restrained as required by this Code section. *Noncompliance with the restraint requirements of this Code section shall not constitute probable cause for violation of any other Code section.*" (Emphasis supplied.) OCGA § 40-8-76.1 (f). Based on Officer Compton's testimony, probable cause existed to perform a traffic stop and give a citation or warning for failure to comply with OCGA § 40-8-76.1, failure to wear a seat belt.

When a police officer makes a traffic stop based on his having a clear view of the occupants of the front seat of a vehicle not wearing their seat belts, he is in the same situation as a police officer making a stop pursuant to *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), except that the initial stop is based on probable cause, not just a reasonable and articulable suspicion that an individual is, or is about to be, engaged in criminal activity. While the probable cause for the initial stop *cannot* itself be used as probable cause for arrests based on violations of other Code sections, once a stop for a seat belt violation is made, the language of OCGA § 40-8-76.1 does not preclude an officer from conducting a reasonable inquiry and investigation to ensure both his safety and that of others. See *Terry v. Ohio*, supra at 20-27; *State v. Armstrong*, 223 Ga. App. 350 (477 SE2d 635) (1996). Clearly, the additional language of this Code section pertaining to probable cause was added for the purpose of prohibiting a search of a person or a vehicle based solely on the failure of an occupant of the front seat to wear a seat belt. However, the language was not intended to prevent an officer from making an arrest on additional offenses based upon separate probable cause ascertained through a reasonable inquiry and investigation following the initial stop. Obviously, an officer need not ignore the smell of alcohol ema-

nating from the driver of a vehicle simply because the initial stop of the vehicle was for a seat belt violation.

Officer Compton's investigation was not arbitrary or harassing. "A law enforcement officer coming upon the scene of suspected criminal activity or a traffic incident will conduct a general on-the-scene investigation and may detain temporarily anyone at the scene who tries to leave. *Lankford v. State*, 204 Ga. App. 405, 406-407 (2) (419 SE2d 498) (1992)." (Punctuation omitted.) *State v. Pastorini*, 222 Ga. App. 316, 317 (1) (474 SE2d 122) (1996). Immediately after the stop, Officer Compton asked Temples for his driver's license and proof of insurance. "An officer conducting a routine traffic stop may request and examine a driver's license and vehicle registration and run a computer check on the documents. See *United States v. Guzman*, 864 F2d 1512, 1519 (10th Cir. 1988). Accord *Florida v. Royer*, 460 U. S. 491, 501-502 (103 SC 1319, 75 LE2d 229) (1983) (airline ticket and driver's license)." *Rogers v. State*, 206 Ga. App. 654, 657 (2) (426 SE2d 209) (1992). Temples immediately volunteered that his driver's license was revoked and that there was no insurance on the vehicle. Temples' "reply that he had no driver's license [or proof of insurance] furnished the probable cause for the arrest for, at least, driving without a license in [his] possession [and no proof of insurance]." *Brown v. State*, 223 Ga. App. 364, 367 (477 SE2d 623) (1996).

Officer Compton testified that, during this inquiry, he detected an odor of alcohol on Temples' breath and observed that his eyes were bloodshot and watery. Based on these observations, Officer Compton, with Temples' consent, tested Temples on the alco-sensor, which showed a "positive" reading for the presence of ethyl alcohol. Under the totality of the circumstances, probable cause existed for Temples' arrest for DUI. *Cann-Hanson v. State*, 223 Ga. App. 690 (478 SE2d 460) (1996); *Lee v. State*, 222 Ga. App. 389 (474 SE2d 281) (1996).

After Officer Compton placed Temples under arrest for DUI, Officer Compton did a computer check to verify Temples' license status and confirmed that Temples' driver's license had been revoked and that Temples had been declared a habitual violator. See *Brown v. State*, supra at 367. As such, probable cause existed for Temples' arrest as a habitual violator.

Therefore, the probable cause for Temples' arrest for habitual violator, DUI, and no proof of insurance was not Temples' violation of OCGA § 40-8-76.1, but was derived from the officer's reasonable inquiry and investigation after the initial stop. The trial court did not err in denying Temples' motion to suppress.

*Judgment affirmed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 22, 1997.

*John T. Martin*, for appellant.

*J. Gray Conger, District Attorney, Melvin E. Hyde, Jr., Assistant District Attorney*, for appellee.