A98A0409. RICHARDSON v. THE STATE.
(501 SE2d 885)

SMITH, Judge.

A Forsyth County grand jury indicted Robert H. Richardson for trafficking in cocaine, OCGA § 16-13-31 (a), possession of more than one ounce of marijuana, OCGA § 16-13-30 (j) (1), no proof of insurance, OCGA § 40-6-10 (a) (1), and operating a motor vehicle without a seat belt, OCGA § 40-8-76. After the trial court denied his motion to suppress, Richardson waived jury trial and the case was presented to the trial court for bench trial on the basis of stipulated facts and the evidence developed at the hearing on Richardson's motion to suppress. Richardson was found guilty of the lesser included offense of possession of cocaine with intent to distribute and possession of more than one ounce of marijuana; the motor vehicle charges were nol prossed by the State. Richardson appeals the judgment of conviction, enumerating as error the denial of his motion to suppress. Finding no error, we affirm.

Construed to support the trial court's ruling, the evidence shows that Forsyth County Sheriff's Deputy Richard Holcomb was on routine patrol in the county at 1:45 in the morning. As part of his duties, he had been instructed to check subdivision building sites because of night-time thefts of construction materials. As he stopped his patrol

car under a street light at the entrance to an unoccupied subdivision to make an entry in his log, he noticed Richardson's vehicle leaving the subdivision. He also observed that Richardson was not wearing a seat belt. For these reasons, Holcomb activated his blue lights and pulled Richardson over for a traffic stop.

Richardson produced a valid driver's license "[a]fter a bit," but was unable to locate proof of insurance. Richardson fumbled through a "black organizer-type zip bag" searching for the proof of insurance while Holcomb held a flashlight over the organizer so that Richardson could see. Holcomb testified that he observed a clear plastic bag containing a "green leafy substance" that appeared to be marijuana in Richardson's organizer. At that point, the officer placed Richardson under arrest, positioned him against the car trunk, and conducted a "pat-down search." As a result of the pat-down search, he discovered large amounts of cash bulging in Richardson's pockets. When Holcomb started to remove the cash, Richardson stepped back from the car trunk and attempted to "turn around on" the officer and acted "very, very nervous." At this point Holcomb handcuffed Richardson. One of the bills Holcomb removed from Richardson's pockets was folded in half, then in half again, separate from the other bills. Because it felt "weird — gritty, like sandpaper," Holcomb unfolded the bill. When he did "a white powdery substance flew from the bill."

Holcomb decided to call for backup, and Sergeant Al Hurst responded. While Hurst detained Richardson, Holcomb searched the vehicle. Hurst testified that when Holcomb opened the vehicle door to begin the search, Richardson said, "When he looks through my car, my bong's going to go up."[1] Holcomb found large amounts of money in the passenger compartment, totaling $17,000.

Holcomb and Hurst testified that they became concerned because the car was parked at a dangerous blind spot on a busy highway with many large trucks "running a little fast" in both directions. At this point, they decided to have the car towed to the sheriff's department to continue the search of the car. Hurst took Richardson to jail, and Holcomb followed the tow truck and the car to the sheriff's department.

At the new location, the officers continued the search of the car, finding water bottles with glass tubes inserted in them in the front and back seats of the vehicle. They were joined by an officer from the drug unit, as well as a City of Cumming police officer with his trained narcotics dog. The dog "alerted" and began scratching at the

---

[1] A "bong" is a hookah or water pipe. See *McConville v. State*, 228 Ga. App. 463, 464 (491 SE2d 900) (1997). Another possibility is that the officer misunderstood Richardson, who may have said that his "bond was going to go up." In either event, the statement may be fairly construed to indicate a consciousness of wrongdoing.

trunk area. When the officers opened the trunk, they found three duffel bags containing substances later determined to be marijuana and cocaine, along with triple-beam scales and baggies.

In reviewing a motion to suppress, "[t]he evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (394 SE2d 639) (1990).

1. We first consider Holcomb's initial stop of the car. The trial court correctly observed that Richardson's presence in the early morning hours in an unoccupied subdivision authorized an initial investigatory stop. See *Popham v. State*, 214 Ga. App. 775 (449 SE2d 150) (1994). Moreover, Holcomb was authorized to arrest Richardson for the commission of a traffic offense in his presence. This rises beyond articulable suspicion to the level of probable cause to arrest. Accordingly, "the trial court clearly was authorized to find that the officers' actions were not pretextual. The stop was to effectuate an arrest, and the fact that, at the time of the stop, the officers may have had a suspicion, short of probable cause, that the vehicle would contain contraband does not demand a finding that the stop was pretextual. A rule requiring a law enforcement officer to forego making a traffic stop which he would otherwise be authorized to make merely because he suspects that the vehicle might be engaged in the transport of illicit drugs would have little to commend it, and we have previously declined the invitation to create such a rule." (Citations, punctuation and emphasis omitted.) *Ridgeway v. State*, 205 Ga. App. 218, 219 (422 SE2d 4) (1992).

Richardson's contention that OCGA § 40-8-76.1 (f) prohibits the use of any evidence gathered as a result of a traffic stop based on a violation of the seat belt law is foreclosed by this Court's decision in *Temples v. State*, 228 Ga. App. 228 (491 SE2d 444) (1997). "Clearly, the additional language of this Code section pertaining to probable cause was added for the purpose of prohibiting a search of a person or a vehicle based solely on the failure of an occupant of the front seat to wear a seat belt. However, the language was not intended to prevent an officer from making an arrest on additional offenses based upon separate probable cause ascertained through a reasonable inquiry and investigation following the initial stop." Id. at 230. Once the officer stopped Richardson, he was authorized to ask Richardson for his driver's license and proof of insurance as part of a reasonable inquiry and investigation after a traffic stop. Id. at 231. The officer's subsequent observation of the green leafy substance as Richardson

looked for his proof of insurance authorized him to place Richardson under arrest for possession of marijuana.

Richardson contended at trial that Officer Holcomb could have observed only the top portion of the bag and could not have been able to see what was in the bag. The trial court noted the conflicting testimony, but found that Officer Holcomb "did see the marijuana that he said he saw." As the finder of fact, the trial court was authorized to accept the officer's account of the incident instead of the version presented by Richardson. *Morgan,* supra.

2. Next, we consider Holcomb's search of Richardson's person and the passenger compartment of his car incident to the arrest for possession of marijuana. "Once a defendant has been placed under custodial arrest, police may search his person, incident to that arrest, for weapons or contraband. Likewise, when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. This court has held that a search is valid as an incident to a lawful custodial arrest where the defendant has been handcuffed and placed in a patrol car while the search was conducted. The decisive factor is whether the arrestee was, at the time of his arrest, a recent occupant of the automobile, not whether the automobile and its contents were in his immediate control at the time of the search." (Citations and punctuation omitted.) *Allison v. State,* 217 Ga. App. 580, 581 (1) (459 SE2d 557) (1995).

Here, Richardson was arrested for possession of the marijuana found in his organizer, and the officers were authorized to search his person and the passenger compartment of his vehicle incident to his arrest.

3. Finally, we consider the search of the vehicle's trunk at the sheriff's department. At this point, the officers had obtained enough information from the search of Richardson's person and the passenger compartment of the vehicle to provide probable cause for a search. "[A]n individual's conduct in response to questioning or attempted questioning may rise to the level of probable cause to conduct an arrest or search. The cumulative effect of the officer[s'] observations and [Richardson's] conduct was sufficient to meet this standard." *Redd v. State,* 229 Ga. App. 364, 366 (494 SE2d 31) (1997). The marijuana found in Richardson's possession, the large amounts of cash found on his person and in the passenger compartment of his car, the white powdery substance found in his pocket, his nervousness, his attempt at evasive action during the search, and his spontaneous remark to one officer that his "bong [or bond] was going to go up," suffice to reach the level of probable cause. See also *Gebremedhin v. State,* 202 Ga. App. 811, 812 (415 SE2d 529) (1992) (combination of suspicious circumstances may amount to sufficient

probable cause for warrantless arrest or search). The "alert" to the trunk area of the vehicle by the trained narcotics dog provided additional support for probable cause to search the car trunk. See generally *Roundtree v. State*, 213 Ga. App. 793, 794-795 (446 SE2d 204) (1994) (probable cause from drug dog's alert on automobile).[2]

Probable cause authorized the officers to search every part of the vehicle that might have concealed illicit drugs, including the trunk and closed containers. *McKinney v. State*, 184 Ga. App. 607, 610 (3) (362 SE2d 65) (1987); *Durden v. State*, 199 Ga. App. 397, 398-399 (405 SE2d 50) (1991). "We need not decide whether an inventory search was proper since the warrantless trunk search had a probable cause basis." Id. at 399. The removal of the vehicle from its location on a dangerous curve to the sheriff's department did not affect the officers' probable cause to continue their search. "[P]olice officers with probable cause to search an automobile on the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. . . . [T]he probable cause factor that developed at the scene still obtained at the station house." (Citations and punctuation omitted.) *Redd v. State*, 240 Ga. 753, 754 (1) (243 SE2d 16) (1978).

For these reasons, the trial court did not err in denying Richardson's motion to suppress.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED MAY 1, 1998.

*Banks, Stubbs & Neville, Rafe Banks III*, for appellant.
*Garry T. Moss, District Attorney, Charles D. Gafnea, Allen D. Morris, Assistant District Attorneys*, for appellee.

---

[2] The officers needed only an articulable suspicion, not probable cause, to bring the narcotics dog to the car. *Pitts v. State*, 221 Ga. App. 309, 311 (2) (471 SE2d 270) (1996).