## A99A1206. BURNS v. THE STATE.
### (521 SE2d 217)

McMURRAY, Presiding Judge.

At a bench trial, defendant and co-defendant, Dewayne Horton, were found guilty of armed robbery (Count 1) and the possession of a firearm during the commission of a felony (Count 2). The evidence, including defendant's custodial statement, showed that defendant and co-defendant Horton robbed a Chatham County convenience store for quick cash by means of a handgun which defendant held to the store clerk's head. In the case sub judice, only defendant Burns appeals from the judgment of conviction. *Held*:

1. Before trial, defendant moved to suppress the physical evidence seized from his pickup and "all the statements they took from the defendants later after the arrest." After an evidentiary hearing, the trial court ruled that the stop and arrest were proper, and that ruling is enumerated as error. Defendant argues the traffic stop of his vehicle was not based on any reasonable, articulable suspicion and further argues his subsequent arrest was without probable cause. We disagree.

The State's evidence at the suppression hearing was uncontroverted, and no question as to the credibility of witnesses is in issue. Consequently, our review of the trial court's ruling is de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474). Viewed in a light most favorable to the trial court's determination, the evidence revealed the following: At about 2:00 a.m. on July 10, 1997, Officer

Frank B. Rigelwood of the Chatham County Police Department received a radio dispatch advising him of an armed robbery which had just occurred at a nearby convenience store on Grove Point Road. The dispatch further advised Officer Rigelwood that two white males, both wearing ski masks, had been identified as the perpetrators; that one was dressed in a camouflage "suit" and the other in a button-up shirt and blue jeans; that one was armed with a "black" pistol; and that the suspects had fled the store on foot and were last seen crossing Grove Point Road heading toward Crown Villa Apartments.

Officer Rigelwood arrived in the vicinity approximately four minutes later, where he observed a small truck driven by a white male which appeared to be coming from Crown Villa Apartments. There was little to no traffic otherwise at that time in the area. Officer Rigelwood followed to "eliminate the possibility of this vehicle being involved." As he followed, Officer Rigelwood positioned his vehicle in a way which allowed him to illuminate the interior of the truck's cab. He observed a second white person "slumped down in the seat to where — so that he could not be visible from the rear." At this point, Officer Rigelwood decided that he should stop the truck to investigate and activated his blue lights.

The truck proceeded nearly one-half mile without slowing, before stopping. Once it pulled over, co-defendant Horton, the passenger, exited the vehicle and walked "briskly" toward the rear of the truck. Horton walked with "his hands down where [Officer Rigelwood] couldn't see them" so the officer ordered Horton to return to the truck. Officer Rigelwood ordered defendant to turn off the vehicle and had him step out of the truck. Officer Rigelwood advised defendant that he had been stopped because there had been an armed robbery in the area where defendant had initially been seen. Twice, defendant denied coming from the vicinity of the robbery, but finally admitted having come from Crown Villa Apartments.

In the meantime, Officer Ruby Huntley, also of the Chatham County Police Department, arrived at the scene. Leaving defendant in the care of Officer Huntley, Officer Rigelwood got Horton out of the truck a second time and walked him beyond the rear of the truck. As Horton cleared the truck, Officer Rigelwood noticed that Horton was wearing camouflage coveralls, the top portion of which had been pulled down around his waist and secured. Without formally being arrested, defendant and co-defendant Horton were then handcuffed and placed in separate patrol cars. Thereafter, a search of the truck revealed "two masks, a blue steel handgun, and some money inside." Finally, while in jail, defendant made a statement, introduced in evidence by the State at trial, in which he admitted having a gun during the armed robbery.

(a) *The Stop*

In the case sub judice, the record shows that Officer Rigelwood arrived in the vicinity of the crime scene promptly after receiving the report that a convenience store had been robbed. He observed a truck being driven by a white male away from the area of the apartment complex to which the perpetrators had reportedly fled at a time when there otherwise was substantially no traffic. In pursuing the truck, he was able to determine that a second white person appeared to be hiding in the vehicle.

"An officer may conduct a brief investigatory stop of a vehicle if that stop is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." (Citations and punctuation omitted.) *Howard v. State*, 233 Ga. App. 861 (505 SE2d 270). "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*." (Citation and punctuation omitted.) *State v. Webb*, 193 Ga. App. 2, 4 (1) (386 SE2d 891). See also *Brown v. State*, 269 Ga. 830, 832 (2) (504 SE2d 443). In the case sub judice, we hold that the totality of the circumstances, including the late hour report of a nearly contemporaneous armed robbery and the place where the defendants were first seen (i.e., the place where the perpetrators were last seen), created a justifiable suspicion concerning defendant's identity and warranted a limited investigative detention to determine if he roughly fit the description of the perpetrators. *State v. Carter*, 240 Ga. 518 (242 SE2d 28). Accord *Jones v. State*, 156 Ga. App. 730 (275 SE2d 778) (whole court). The trial court correctly determined that the initial investigatory stop was authorized.

(b) *The Arrest*

Defendant was slow in stopping his vehicle after Officer Rigelwood activated the blue lights and was evasive before conceding that he had just come from Crown Villa Apartments. Officer Rigelwood noticed that Horton wore camouflage clothing as described in the dispatch report.

> " 'Whether [an] arrest [is] constitutionally valid depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person suspected] had committed or was committing an offense.' (Cit.)"

*Mitchell v. State*, 200 Ga. App. 146, 147 (1) (407 SE2d 115).

Under the totality of the circumstances, those justifying the stop

and those which developed thereafter, particularly, the fact that Officer Rigelwood saw that co-defendant Horton wore camouflage coveralls such as mentioned in the police dispatch, we conclude that Officer Rigelwood had sufficient probable cause to justify both defendant's and Horton's custodial arrest for suspicion of armed robbery, and the trial court properly denied the defendant's motion to suppress. *Richardson v. State*, 232 Ga. App. 398, 401 (2) (501 SE2d 885) (automobile search valid as incident to a lawful custodial arrest where the defendant has been handcuffed and placed in patrol car if, as here, arrestee was a recent occupant of vehicle). Consequently, the search of defendant's vehicle yielding the ski masks and the handgun was authorized as incidental to that lawful arrest. *Gilbert v. State*, 212 Ga. App. 308 (1), 309 (441 SE2d 785).

2. In his remaining enumeration of error, defendant contends that OCGA § 17-10-6.1 is unconstitutional, arguing this Code section denies those convicted of serious violent felonies consideration for first offender treatment under OCGA § 42-8-60, violating the due process, equal protection, cruel and unusual punishment and ex post facto clauses of the Georgia and United States Constitutions.

(a) Defendant raised the instant enumeration of error below only by challenging OCGA § 17-10-6.1 as an ex post facto law as applied, and this is the only basis supported on appeal by argument and citation of authority. Accordingly, we will address this enumeration of error only to the extent he argues OCGA § 17-10-6.1 is an ex post facto law. Court of Appeals Rule 27 (c) (2) ("Unsupported claim of error treated as abandoned"); see also *Williams v. State*, 208 Ga. App. 716, 717 (3) (431 SE2d 469) (nothing presented for decision when error raised for first time on appeal).

(b) Defendant's sentence is not the result of an ex post facto law.

> In general, a law is ex post facto if it inflicts upon the party being tried a greater punishment than the law annexed to the crime at the time it was committed or it alters the situation of the accused to his disadvantage. *Todd v. State*, 228 Ga. 746, 751 (187 SE2d 831) (1972).

*Brantley v. State*, 268 Ga. 151, 153 (2) (486 SE2d 169).

In *Fleming v. State*, 233 Ga. App. 483, 487 (3) (504 SE2d 542), this Court affirmed the trial court's refusal to sentence Fleming under the First Offender Act and held that the express intent of the General Assembly in amending both the First Offender Act and the Sentence Reform Act of 1994 was to make clear that the First Offender Act does not apply to sentences for serious violent felonies under OCGA § 17-10-6.1, the Sentence Reform Act of 1994. See *State v. Hamilton*, 238 Ga. App. 40 (517 SE2d 583). "[S]ubsequent legisla-

tion declaring the intent of a legislative body in enacting an earlier statute is entitled to great weight in statutory construction." (Citations and punctuation omitted.) *Hicks v. State*, 228 Ga. App. 235, 237 (1) (494 SE2d 342).

The instant armed robbery, a serious violent felony under OCGA § 17-10-6.1 (a) (2), was committed on July 10, 1997 and so was punishable under the Sentence Reform Act of 1994. From its inception, the Sentence Reform Act of 1994 foreclosed first offender treatment to those sentenced thereunder. *Fleming*, supra. Thus, the trial court's refusal to consider defendant for first offender treatment neither retroactively increased the punishment applicable to armed robbery at the time defendant committed the armed robbery for which he was convicted nor altered defendant's situation to his disadvantage. Accordingly, OCGA § 17-10-6.1, as amended, was not impermissibly applied as an ex post facto law. See *Todd v. State*, 228 Ga. at 751, supra. This enumeration of error is without merit.

*Judgment affirmed. Andrews, P. J., concurs. Ruffin, J., concurs in the judgment only.*

DECIDED JULY 23, 1999 —
RECONSIDERATION DENIED AUGUST 6, 1999

*Jackson & Schiavone, Michael G. Schiavone, Steven L. Sparger,* for appellant.

*Spencer Lawton, Jr., District Attorney, Melanie Higgins, Assistant District Attorney,* for appellee.