## A03A1406. THE STATE v. SILVA.
(587 SE2d 762)

ANDREWS, Presiding Judge.

The State appeals the trial court's grant of Edward Silva's motion to suppress the brick of marijuana found under the passenger seat of his car following a traffic stop for speeding. Because we conclude that the officer, having made a valid traffic stop for speeding, was properly conducting a limited search for weapons when he encountered the "plain smell" of marijuana, we reverse.

"[W]here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review." *Vansant v. State*, 264 Ga. 319, 320 (443 SE2d 474) (1994).

Gainesville Police Officer Von Essen was on patrol, set up beside the road with his marked patrol car facing oncoming traffic around 7:40 p.m. While using his Pro Laser III to check the speed of vehicles coming into the city, he observed Silva's red Chevrolet Corsica rapidly approaching him and aimed the laser at him, clocking him at 74 mph in a 45-mph zone. Von Essen activated his blue lights as Silva approached and a car several hundred feet ahead of Silva stopped, although Silva did not. As Silva's car went by his patrol car, Von Essen could see Silva leaning at approximately a 45 degree angle toward the passenger's seat with his right arm extended into the area beneath the passenger's seat.

After Von Essen pulled in behind Silva, Silva, who had passed one car really fast, braked really hard, changed lanes while still leaning over, and pulled to the right shoulder of the road where he stopped. Both the driver's and passenger's side windows were rolled down. As Von Essen began to walk toward the driver's side, he became concerned because he had seen Silva lean to the right and he instead went to the passenger's side window. He asked Silva what he was doing going 74 mph in a 45-mph zone, and Silva, who appeared nervous, apologized, saying he was going to pick up his baby. Von Essen then asked what Silva had put under the passenger's seat, and Silva said he had not, but was trying to get his cell phone. Von Essen asked Silva to get out of the car and come to his patrol car. There, Von Essen had Silva place his hands on the hood and frisked him for weapons. As Von Essen testified, he wanted to get Silva out of the car and away from whatever he placed under the seat so he could frisk

him before checking under the seat. Finding no weapons on Silva, Von Essen then walked around to the passenger's door. As he testified, "I then went to the passenger side to check what he had placed underneath the front passenger seat concerning maybe *a weapon or something of that nature.*" (Emphasis supplied.) As he knelt down to look under the seat, Von Essen smelled the odor of marijuana. He saw a six- or eight-inch by three- or four-inch rag folded into a square lump. Upon opening the rag and the plastic bag inside it, Von Essen found a brick of marijuana.

In his motion to suppress, Silva contended that the seizure and arrest were without "any legal justification whatsoever" and that the seizure was "without consent, without probable cause, and pursuant to an illegal vehicle search." The trial court found that "the initial search of defendant and defendant's automobile was illegal and was without warrant and was without probable cause. . . ."

The traffic offense of speeding, committed in his presence, gave Von Essen probable cause to arrest Silva. *State v. Picot*, 255 Ga. App. 513, 515 (1) (565 SE2d 865) (2002); *Harris v. State*, 239 Ga. App. 537, 540 (521 SE2d 462) (1999), citing *Richardson v. State*, 232 Ga. App. 398, 400 (1) (501 SE2d 885) (1998).

We need not determine whether, as argued by the State, this, without more, authorized a full search of Silva's automobile because Von Essen never testified that Silva was "in custody" at the time he looked under the seat or whether it was his intention to merely issue a citation for the speeding and allow Silva to leave. OCGA §§ 40-13-1; 40-13-30.[1]

Even if Von Essen intended to issue a citation and allow Silva to leave, there remained the issue of what Silva had placed under the front seat of the automobile. Carrying a concealed weapon is illegal and Von Essen was concerned that one might be under that seat. OCGA § 16-11-126 (a); see *State v. Jarrells*, 207 Ga. App. 192 (427 SE2d 568) (1993). Therefore, Von Essen was entitled to keep Silva under investigatory detention until he determined whether there was a weapon under the seat.

> A reasonable search for weapons for the protection of the police officer, is permitted where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a rea-

---

[1] Silva did not testify.

sonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry v. Ohio*, 39[2] U. S. 1, 27 (88 SC 1868, 20 LE2d 889) (1968).

(Citations and punctuation omitted.) *Mashburn v. State*, 186 Ga. App. 488, 489 (367 SE2d 881) (1988). See *Hamm v. State*, 259 Ga. App. 412, 413 (577 SE2d 85) (2003).

That Silva offered an innocent explanation of the lean does not preclude Von Essen's checking out the car before allowing Silva to get back in it. As stated in *Hayes v. State*, 202 Ga. App. 204, 205 (414 SE2d 321) (1991), "[W]e certainly know of no constitutional provision which would require that the officer stake his life on [Silva's] explanation rather than upon the officer's own determination of whether [he] was armed." See also *State v. Jarrells*, supra at 193.

Once Von Essen knelt down to check under the seat, he encountered the smell of unburned marijuana, with which he was familiar based on encountering it a couple of hundred times in his work. As explicated in *Coolidge v. New Hampshire*, 403 U. S. 443, 468 (II) (C) (91 SC 2022, 29 LE2d 564) (1971), the plain view doctrine requires the existence of three criteria: (1) there must be a prior valid intrusion onto a person's property before the evidence is observed and seized; (2) discovery of the evidence must be inadvertent; and (3) it must be apparent that the item seized is evidence or contraband. All three factors are present in this case. Having encountered the "plain smell" of marijuana while in a place he validly entered, Von Essen was entitled to seize the contraband. *Carter v. State*, 222 Ga. App. 345, 347 (1) (474 SE2d 240) (1996).

*Judgment reversed. Johnson, P. J., Eldridge and Adams, JJ., concur. Blackburn, P. J., Barnes and Mikell, JJ., dissent.*

BARNES, Judge, dissenting.

As I cannot agree that the trial court erred by granting Silva's motion to suppress, I must respectfully dissent.

When we review

a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury ver-

dict and will not be disturbed if there is any evidence to support them.

(Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). Further, when reviewing this decision,

> the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to the questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). These principles apply equally to rulings by a trial court granting a motion to suppress. Id.

Here, the trial court ruled from the bench that

> in this case the officer had no idea of anything concerning the defendant except he is coming down the road exceeding the speed limit. So he doesn't have any particular reason to think that the defendant may be dangerous. I think the extension of the search to the automobile is an unlawful search, and the motion to suppress is granted.

Then, in its written order the trial court further ruled that

> After hearing evidence and argument of counsel, the Court finds that the initial search of defendant and defendant's automobile was illegal and was without warrant and was without probable cause, and that after being arrested the defendant was held in custody and was subject to interrogation and that such custody and interrogation were therefore rendered illegal by the initial illegality of the search. . . .

I cannot agree with the majority's conclusion that no question of credibility exists in this case. The primary issue is the credibility of the police officer and the basis for his search of Silva's car. The officer did not believe Silva's explanation that he was reaching to retrieve his cell phone, and decided to search the car.

The officer's police report, prepared days after the incident and introduced at the hearing on the motion to suppress, states that when Silva saw the officer, Silva "immediately began leaning over to his right in an apparent attempt to *retrieve an item or conceal an item*." (Emphasis supplied.) At the hearing, however, the officer's concern that Silva may have retrieved something had disappeared, and his concern focused solely on what Silva may have put there. The officer testified that he "went to the passenger side to check what [Silva] had placed underneath the front passenger seat concerning maybe a weapon or something of that nature." The officer said he was concerned about something under the seat because "[i]t was very obvious to me that he had took the effort under unsafe conditions to put something right there." Although the officer testified that his primary concern was for weapons, his testimony was always equivocal. He testified that it was his policy to perform a *Terry* frisk on the inside of a vehicle when faced with "something that blatant going underneath the seat," and he testified that his concern was for what Silva had placed under the seat, "*possibly* a weapon." (Emphasis supplied.)

The officer never testified that he believed that a weapon was under the seat or that he suspected a weapon was there. The evidence shows he was interested in whether a weapon might be there because he thought that Silva had concealed something, but he articulated no basis for him to suspect that a weapon would be in the car. This was not a drug investigation; it was a routine traffic stop. Indeed, at the time of the search, the officer did not even suspect that Silva was under the influence. The officer gave no reason why he might have suspected that Silva would be armed, and had, in fact, just conducted a *Terry* frisk of Silva's person without finding anything.

Implicit in the trial court's ruling is that the trial court did not believe that the officer was conducting a search for a weapon. Although no witness testified to contradict the officer, the trial court was not obligated to believe the officer because the officer's report and the circumstances of the stop were inconsistent with the officer's testimony on the point. *Chaffin v. Community Loan &c. Co.*, 67 Ga. App. 410 (20 SE2d 435) (1942). Also, the trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony. *Tate v. State*, supra, 264 Ga. at 56 (3); *State v. Betsill*, 144 Ga. App. 267, 268 (2) (240 SE2d 781) (1977).

Moreover, the trial court also found that the officer had no "particular reason to think that the defendant may be dangerous." This is a significant finding of fact because the finding negates the second element required for a legitimate *Terry* frisk or search of an automo-

bile under *Michigan v. Long*, 463 U. S. 1032 (103 SC 3469, 77 LE2d 1201) (1983). A reasonable belief that the person to be frisked is armed and dangerous is the predicate to a *Terry* search for weapons. *Ybarra v. Illinois*, 444 U. S. 85, 93 (100 SC 338, 62 LE2d 238) (1979). Further, "[n]othing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or, indeed, any search whatever for anything but weapons." Id. at 93-94.

Law enforcement authorities have no general authority to search automobiles just because they have made a traffic stop. Under our law,

> law enforcement officers who have detained but not arrested the occupants of an automobile may conduct a warrantless search of the automobile passenger compartment, limited to those areas in which a weapon may be placed or hidden, if the officers possess a reasonable belief, based on specific and articulable facts and rational inferences from those facts, that the occupants of the automobile are *dangerous* and *may gain immediate control of a weapon*. If the police have specific and articulable facts and rational inferences from such facts to make them believe that the occupants of a car *are dangerous* and *could get control of a weapon*, they are entitled to conduct a warrantless weapons search of the passenger compartment of the car, regardless of whether or not the weapon was in plain view, and regardless of the fact that the occupants were not under arrest, and regardless of the existence or non-existence of probable cause to search for contraband or other evidence.

(Citation and punctuation omitted; emphasis supplied.) *State v. Jarrells*, 207 Ga. App. 192, 193 (3) (427 SE2d 568) (1993).

No evidence even suggested that Silva possessed or might use a weapon. He made no gestures or movements that showed any hostility toward the officer, and the officer testified that Silva was only somewhat nervous. Further, no evidence exists from which it might be inferred that Silva was dangerous. See *Clark v. State*, 235 Ga. App. 569, 572-573 (2) (a) (510 SE2d 319) (1998) (physical precedent only).

The evidence in this case, which we must construe most favorably to uphold the trial court's judgment, fully supports the trial court's finding that Silva was not dangerous, and because the finding is supported by the evidence, we cannot disturb it. In these circumstances, I cannot agree that the trial court erred by granting the motion to suppress, and, therefore, I must respectfully dissent.

I am authorized to state that Presiding Judge Blackburn and Judge Mikell join in this dissent.

DECIDED SEPTEMBER 3, 2003 —
RECONSIDERATION DENIED SEPTEMBER 25, 2003 — 

*Jason J. Deal, District Attorney, E. Paul Stanley, Assistant District Attorney*, for appellant.
*W. Bennett Gaff, Daniel A. Summer*, for appellee.