**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 22, 2013**

# In the Court of Appeals of Georgia

A13A1393. MITCHELL v. THE STATE.
A13A1394. TILLER v. THE STATE.

ANDREWS, Presiding Judge.

Sheldon Mitchell and Rebba Christine Tiller were jointly tried in a bench trial

on evidence stipulated to by the prosecution and the defense. Mitchell was found

guilty of manufacturing marijuana in violation of OCGA § 16-13-30; possession of

marijuana with intent to distribute in violation of OCGA § 16-13-30; and

manufacturing marijuana and possessing marijuana with intent to distribute within

1000 feet of a public school in violation of OCGA § 16-13-32.4. Tiller was found

guilty of possession of oxycodone in violation of OCGA § 16-13-30. All of the

convictions were based on evidence of marijuana and oxycodone found by police

during a search (pursuant to a search warrant) of the residence occupied by Mitchell and Tiller.

Mitchell and Tiller contend that the trial court erred by denying their motions to suppress evidence of the marijuana and oxycodone because it was found during a search conducted in violation of the Fourth Amendment. We agree. Because the search warrant was issued based on knowledge illegally obtained by police in violation of the Fourth Amendment, the subsequent search pursuant to the warrant was illegal, and the trial court erred by denying the motions to suppress. In the absence of the illegally obtained evidence, there was insufficient evidence to support the guilty verdicts. Accordingly, the convictions against Mitchell and Tiller must be reversed.

The record shows that, at about 11:00 p.m., police were searching for the driver of a car who had fled from the scene of a traffic stop. A dual purpose police dog – a dog trained to detect people as well as drugs – was brought to the scene of the traffic stop to help search for the driver. After unsuccessfully searching for the driver with the dog for about two hours near the scene of the stop, police officers and the dog were walking back to the stop scene along a street on which a residence occupied by Mitchell and Tiller was located. As the officers passed the driveway of the residence,

2

an officer heard "some type of crashing in the woods . . . a tree branch breaking or something like that." The sound came from a wooded area located adjacent to the residence. On a hunch that the sound might have been made by the driver, the officers decided to search the wooded area with the dog. A stream ran between the street and the wooded area, and the driveway to the residence provided a bridge across the stream. At about 1:00 a.m., the officers and the leashed dog entered onto the residential property on the driveway and used the bridge on the driveway to cross the stream. Before reaching the residence, the officers and the dog left the driveway, walked in front of the residence across the front yard, then alongside the residence in the side yard, then away from the residence in the side yard toward another bridge which led into the adjacent wooded area. At some point after the officers left the driveway and were crossing the yard of the residence, the officers smelled the strong and distinctive odor of raw marijuana coming from the residence. As the officers continued across the yard, the dog also smelled and alerted to the odor and pulled on its leash toward the basement door located on the side of the residence. The officer pulled the dog away from the residence and continued into the adjacent woods where the officers and the dog unsuccessfully searched for the driver. After concluding their search of the woods, the officers and the dog returned by the same route, again cutting

3

across the side and front yards of the residence to the driveway and then back to the street. During the return trip across the yard of the residence, the dog alerted again in the same area.

The officer returned the dog to his police vehicle, then returned to the residence and knocked on the door. When Mitchell answered the door, the officer told him that, while he was coming through his yard, he smelled the odor of marijuana. Mitchell responded that he did not know what the officer was talking about. The officer asked if anyone else was inside the residence, and Mitchell identified Tiller and told the officer that he would not allow him inside. The officer then left the scene to apply to the Magistrate Court for a warrant to search the residence. In support of an application for a warrant to search the residence, the officer stated under oath that he had probable cause to believe that marijuana and related paraphernalia were located in the residence because he and his police dog, which was certified to detect the odor of marijuana, "had to pass through the yard of the residence" and "smelled a strong odor of raw marijuana coming from the residence." The officer further stated that the dog alerted for the odor on the basement door of the residence, and that two other officers stated that they also smelled the strong odor of raw marijuana as they walked in the yard of the residence. Based on this information, the Magistrate Court issued

4

a warrant for the officers to search the residence. During a search of the residence pursuant to the warrant, officers found approximately 196 marijuana plants growing in the residence, and found oxycodone in a container in Tiller's purse.

The record shows that the police and the police dog initially smelled the odor of raw marijuana coming from the residence after they left the driveway and intruded into the yard or curtilage of the residence. The yard in which the officers and dog were walking when they smelled the marijuana was immediately surrounding the residence, an area within the curtilage of the residence, and was therefore an area in which Mitchell and Tiller had a reasonable expectation of privacy protected by the Fourth Amendment's prohibition against unreasonable searches and seizures. *Espinoza v. State*, 265 Ga. 171, 172-173 (454 SE2d 765) (1995).[1] This area is considered "part of the home itself for Fourth Amendment purposes." *Oliver v.*

---

[1] By contrast, "[the] Fourth Amendment does not cover police observations from places where visitors are expected, such as walkways, driveways, and porches." *Espinoza*, 265 Ga. at 173. In denying the motions to suppress, the trial court found that the officers first smelled marijuana (and that the dog first alerted to the smell of marijuana) while they were still walking on the driveway of the residence before they entered the adjacent yard. We find no support in the record for this finding of fact. In the absence of support in the record for a finding that the first smell of marijuana was detected on the driveway, we conclude that this finding of fact by the trial court was clearly erroneous. *Woods v. State*, 258 Ga. 540, 541 (371 SE2d 865) (1988) (trial court's findings of fact accepted on appeal unless clearly erroneous).

5

*United States*, 466 U. S. 170, 180 (104 SCt 1735, 80 LE2d 214) (1984). Because the intrusion into this protected area occurred without consent, a warrant, or probable cause and exigent circumstances, the officers were illegally present in the area in violation of the Fourth Amendment.[2] *Corey v. State*, 320 Ga. App. 350, 353 (739 SE2d 790) (2013). "[N]o search in a Fourth Amendment sense has occurred when a law enforcement officer, lawfully present at a certain place, detects odors emanating from private premises . . ." Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.2 (a) (2012). But in this case, because the officers and the dog were unlawfully intruding on the curtilage of the residence, the odor of marijuana they smelled during the intrusion was evidence illegally obtained by search or seizure in violation of the Fourth Amendment. Compare *State v. Silva*, 263 Ga. App. 371, 373 (587 SE2d 762) (2003) (no Fourth Amendment violation where officer detected "plain smell" of marijuana from a place where he was lawfully present). The evidence

---

[2] Exigent circumstances can be established on the basis that police are in "hot pursuit" of a fleeing suspect. The trial court made no such finding in this case. We find no basis to conclude that the officers were in "hot pursuit" of the driver when they entered the curtilage of the residence. The officers had been searching unsuccessfully for the driver for two hours after he fled the traffic stop when they entered the curtilage to explore a hunch that the driver may have been in an adjacent wooded area. See *Darby v. State*, 216 Ga. App. 781, 782 (455 SE2d 850) (1995) (no continuity and immediacy of pursuit to establish "hot pursuit"; officers merely following a hunch that suspect was in residence).

6

of marijuana and oxycodone found during the search of the residence should have been suppressed by the trial court because the finding of probable cause to issue the search warrant was based wholly on information illegally obtained by the officers in violation of the Fourth Amendment. *Rothfuss v. State*, 160 Ga. App. 863, 864-865 (288 SE2d 579) (1982).

*Judgments reversed in Case Nos. A13A1393 and A13A1394. Dillard and McMillian, JJ., concur.*