### A03A1983. THE STATE v. SLEDGE.
(591 SE2d 479)

RUFFIN, Presiding Judge.

The State charged Eric Cleatus Sledge with speeding, "laying drags" in violation of OCGA § 40-6-251, and driving under the influence of alcohol to the extent that it was less safe for him to drive. Citing a lack of probable cause for his arrest, Sledge moved to suppress all evidence resulting from the arrest, including any state-administered test results or refusal of state testing. Following a hearing, the trial court granted Sledge's motion. The State appeals, and for reasons that follow, we reverse.

---

On appeal from a ruling on a motion to suppress, we must construe the evidence most favorably to affirming the trial court's factual findings and judgment.[1] We accept the trial court's factual and credibility determinations unless they are clearly erroneous, and the factual findings will be upheld if they are supported by any evidence.[2] The trial court's application of the law to undisputed facts, however, is subject to a de novo standard of review.[3]

So viewed, the record shows that, in the early morning hours of April 28, 2002, Lieutenant Jeff Smith of the City of Lawrenceville Police Department was on patrol. At approximately 3:28 a.m., Smith heard the sound of tires spinning or "screeching" on a nearby street. He investigated and saw a car stopped at a traffic light. As he approached the intersection, the light turned green, and the vehicle accelerated rapidly. According to Smith, the car's "tires lost traction and the vehicle gyrated as it made a left turn[,] . . . and [it] left the intersection in somewhat of a fishtail manner as it accelerated."

Smith followed the car, and although he reached speeds of approximately 110 mph, he did not gain any ground on it. The car eventually slowed down as it turned into a subdivision. At that point, Smith activated his blue lights, and the vehicle stopped. Based on his training, Smith estimated that the car was traveling at over 100 mph on a street with a posted speed limit of 45 mph.

Smith approached the car and asked the driver, identified as Sledge, for his license and proof of insurance. Sledge produced the information without any difficulty. As he spoke with Sledge, Smith noticed that Sledge's eyes were bloodshot and glassy, and he detected a strong odor of alcohol coming from Sledge's face and breath. Smith then asked Sledge to get out of the car. Sledge did so and, according to Smith, appeared steady on his feet. Smith also testified that Sledge's speech was not slurred.

Smith requested that Sledge take an alco-sensor test. Sledge agreed, and the alco-sensor registered positive for alcohol. Smith, however, did not conduct any field sobriety evaluations. He explained that Sledge had stopped his car on a fairly steep grade, and he did not believe that Sledge should be asked to perform the "walk and turn" and "one leg standing" tests on such terrain. He also chose not to administer the "horizontal gaze nystagmus" test because, given the terrain, he could not give "the full battery of the standardized field sobriety tests."

Based upon Sledge's driving, his physical manifestations, and the positive alco-sensor reading, Smith arrested Sledge for speeding,

---

[1] See *Malone v. State*, 261 Ga. App. 420, 421 (582 SE2d 561) (2003).
[2] See id.
[3] See *State v. Graddy*, 262 Ga. App. 98 (1) (585 SE2d 147) (2003).

laying drags, and driving under the influence of alcohol. Smith read Sledge the Georgia implied consent warning and requested a chemical test of Sledge's breath. Sledge refused to consent to the test.

Smith was the only witness called at the suppression hearing. Following his testimony, the trial court determined that Smith lacked probable cause to arrest Sledge for driving under the influence of alcohol to the extent that he was less safe to drive. It noted that the evidence showed "obvious reckless driving by" Sledge. It further found, however, that Smith could not determine how much alcohol Sledge had consumed based on the odor around Sledge's face and on his breath. The trial court also concluded that bloodshot eyes do not establish impairment and that an alco-sensor merely shows whether a person is positive or negative for alcohol. Ultimately, the court determined that, absent "some other objective symptom, whether it's unsteady on his feet, some field sobriety testing, . . . some observation of lack of motor skills or inability to maintain lane [or] negotiate turns, . . . this [evidence] is not enough."

In making its ruling, the trial court did not suggest that Smith lacked credibility or was untrustworthy.[4] It did not question that Smith saw Sledge driving recklessly, detected an odor of alcohol on Sledge's breath, observed that Sledge had bloodshot eyes, and administered an alco-sensor test, which registered positive for alcohol. The court merely found that Smith needed additional evidence that Sledge was impaired before arresting him.

We disagree. "The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility."[5] To arrest a suspect for driving under the influence, an officer need only "have knowledge or reasonably trustworthy information that [the] suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely."[6] And we have previously found that, "[e]ven in the absence of the field sobriety tests, the officer's observation that [a suspect] had bloodshot, watery eyes and exuded an odor of alcohol was sufficient to show probable cause to arrest him for driving under the influence."[7]

---

[4] If the trial judge in this case had resolved the credibility issues *against* the officer, the result of this appeal likely would be different. See *State v. Batty*, 259 Ga. App. 431, 432 (577 SE2d 98) (2003) ("the trial court explicitly found [the officer's] credibility to be lacking" as to reasonable grounds to believe defendant was impaired); *State v. Baxton*, 205 Ga. App. 36, 38 (421 SE2d 129) (1992) (trial court did not err in rejecting officer's testimony that defendant appeared intoxicated where evidence supported conclusion that arrest was a pretext for an unlawful search).

[5] *Malone*, supra at 421.

[6] Id.

[7] *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996).

Given Sledge's conduct while driving, the odor of alcohol surrounding him, his bloodshot and glassy eyes, and the result of the alco-sensor test, Smith had probable cause to arrest Sledge for driving under the influence.[8] Accordingly, the trial court erred in granting Sledge's motion to suppress.

*Judgment reversed. Smith, C. J., and Miller, J., concur.*

DECIDED DECEMBER 10, 2003 — 

*Gerald N. Blaney, Jr.,* Solicitor-General, *Jeffrey P. Kwiatkowski, Jason R. Samuels, Gary S. Vey,* Assistant Solicitors-General, for appellant.

*Wystan B. Getz,* for appellee.

---

[8] See id. See also *Keenan v. State,* 263 Ga. 569, 571 (2) (436 SE2d 475) (1993) ("[T]he alco-sensor is used as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of driving under the influence of alcohol."); *Temples v. State,* 228 Ga. App. 228, 231 (491 SE2d 444) (1997) (officer had probable cause to arrest defendant for DUI based on odor of alcohol on defendant's breath, defendant's bloodshot and watery eyes, and positive reading from alco-sensor); *Lee v. State,* 222 Ga. App. 389, 391 (2) (474 SE2d 281) (1996) (officer had probable cause to arrest driver for DUI following wreck given the odor of alcohol around her person and in her car, her "glassy" eyes, and her admission that she had consumed alcohol earlier in the day); *Herkert v. State,* 177 Ga. App. 610 (1) (340 SE2d 251) (1986) (officer had probable cause to arrest defendant after observing defendant's erratic and potentially dangerous driving, smelling alcohol on the defendant, and noting defendant's bloodshot eyes).