## A07A2498. THE STATE v. GRAVITT et al.
(658 SE2d 424)

PHIPPS, Judge.

Appealing from the grant of Mickey Gravitt's and Christina Croy's motions to suppress evidence found during a search of Croy's Fayette County home, the state argues that the trial court erred when it refused to allow the state to present additional evidence at a second hearing and when it granted the motions. We find no error and affirm.

> When reviewing a trial court's order on a motion to suppress, where some facts are contested and some are not, this Court views the contested facts under the clearly erroneous standard, while review of the application of law to the uncontested facts is de novo.[1]

> A trial judge's findings of fact on a motion to suppress should not be disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed most favorably to the upholding of the trial court's findings and judgment.[2]

So viewed, the record shows that on June 12, 2006, Sergeant Scotty Spriggs, Investigator Michael McCarron, and other members of the Forsyth County Narcotics Unit received information that Bill Sweeney, who had failed to appear at his sentencing for theft, was at the Croy residence. The property consisted of a brick house built partially underground next to a lake; a shed to the left and up a slight incline about 30 yards from the brick house; and a dilapidated white house and a trailer at the end of a second, long driveway "a pretty good distance" from the main brick house. The five officers parked their two cars in the main house's driveway and got out of their cars in plainclothes but with guns on and badges out. They saw Gary Boone and Richard West standing in front of a red pickup truck in the driveway and Steven Fortune and David McBrayer working on a white Pontiac Grand Am on a concrete pad next to the house. When Sergeant Spriggs asked Boone and West who lived in the house, both responded that Mickey Gravitt did.

McBrayer then walked about ten yards up the incline from the main house's driveway to the shed. Gravitt and his daughter emerged from the shed, and Gravitt walked down the path, meeting McBrayer

---

[1] *State v. Graddy*, 262 Ga. App. 98 (1) (585 SE2d 147) (2003), aff'd, *Graddy v. State*, 277 Ga. 765 (596 SE2d 109) (2004), citing *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[2] *Kirsche v. State*, 271 Ga. App. 729 (611 SE2d 64) (2005) (citations omitted).

and the officers at the red truck. Gravitt, who appeared nervous, told the police that Sweeney had previously visited the trailer next door. Investigator McCarron began to walk along "the same path" that McBrayer and Gravitt had "traveled up" when he spotted a plastic bag containing what appeared to be methamphetamine on the ground. When McCarron asked Gravitt what the bag was, Gravitt replied that McCarron himself had dropped or put the bag on the ground and that it was not his. McBrayer also told McCarron, "You're not pinning that dope on me." Gravitt then swore, began to run toward the house, and called for his daughter, who had already entered the house, to lock the door. Sergeant Spriggs grabbed Gravitt and took him down onto the ground while Investigator McCarron subdued and handcuffed McBrayer. Spriggs decided to apply for a warrant to search the house.

McCarron and a third officer resumed walking toward the trailer. Sergeant Spriggs then yelled that a man was "running towards the lake," and McCarron saw a white male later identified as Richard Croy jump into a boat and start to paddle toward the middle of the lake. McCarron apprehended Croy and returned to the house. As he did so, he saw Christina Croy walking in a crouch around the right side of the house toward the front door. When McCarron asked her what she was doing, she opened the door, stepped inside, slammed the door behind her, and locked it. McCarron told her to come out, but she refused, saying that the police did not have a warrant. McCarron then heard the sound of glass breaking. Spriggs and McCarron then decided to force their way into the house, where they found shattered smoking devices in a bathtub. A search pursuant to the warrant granted later that afternoon recovered methamphetamine, marijuana, a variety of yellow, blue, and white pills, digital scales, packaging material, a ledger recording drug sales, a handgun, and other drug paraphernalia.

Gravitt and Croy were charged with possession of methamphetamine, oxycodone, and marijuana with intent to distribute as well as manufacture of marijuana. Croy was also charged with obstruction. Both defendants brought motions to suppress, with Gravitt's motion asserting that the officers had engaged in an improper search of the curtilage. After an evidentiary hearing and further oral argument at a second hearing, the trial court granted the motions.

1. The state first argues that the trial court erred when it barred the presentation of additional evidence at the second hearing on the matter. We disagree.

Evidence was closed at the first hearing on the motions to suppress without any objection by the state. At the second hearing, moreover, the state asserted only — and incorrectly — that the motions had failed to raise the issue of an impermissible search of the

curtilage. "It is always within the sole discretion of the trial court to permit either the [s]tate or the defense in criminal cases to reopen the case after the close of the evidence."[3] The trial court did not abuse its discretion when it asked for additional argument on the timely raised issue of curtilage search, scheduled a second hearing for that purpose, and barred the state from presenting further evidence at that time.

2. The state also argues that the trial court erred when it found that (a) McCarron's walk up the path toward the shed after speaking with Gravitt amounted to an impermissible search of the curtilage and (b) the bag of methamphetamine found on that walk, as well as all other evidence later seized at the site, must therefore be suppressed. We disagree.

(a) "[U]nder the Fourth Amendment, police officers are prohibited from entering a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances."[4] This broad rule is subject to the exception that any visitor, including a police officer, may enter the curtilage of a house when that visitor takes "the same route as would any guest, deliveryman, postal employee, or other caller."[5] Neither Gravitt nor Croy disputes that the officers' original approach to the house via its driveway was lawful, and the State does not argue that either consent or exigent circumstances existed here. We therefore consider only whether the trial court erred when it concluded that the bag of methamphetamine was found during an unauthorized search of the curtilage of the Croy residence.

The Supreme Court of Georgia has defined curtilage as "the yards and grounds of a particular address, its gardens, barns, and buildings."[6] The four factors involved in considering whether a location is within the curtilage are

the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.[7]

---

[3] *Morris v. State*, 170 Ga. App. 849, 850 (2) (318 SE2d 517) (1984) (citations omitted).

[4] *State v. Pando*, 284 Ga. App. 70, 72 (1) (a) (643 SE2d 342) (2007) (citation omitted).

[5] *Pickens v. State*, 225 Ga. App. 792, 793 (1) (a) (484 SE2d 731) (1997) (citation and punctuation omitted).

[6] *Landers v. State*, 250 Ga. 808, 809 (301 SE2d 633) (1983) (citation and punctuation omitted).

[7] *Espinoza v. State*, 265 Ga. 171, 173 (2) (454 SE2d 765) (1995) (citations and punctuation omitted).

"Whether evidence is found within the curtilage of a residence is a mixed question of fact and law."[8]

Given the absence of photographic evidence concerning the layout of the Croy residence, we are in no position to dispute the trial court's finding that the bag containing methamphetamine was found during an unauthorized intrusion into the curtilage of the property. The officers had already made contact with Garrity for the purpose of learning the whereabouts of Sweeney when McCarron began walking up the path. Sergeant Spriggs testified that the officers at that stage suspected only that Sweeney was located "somewhere in the general area or at [the Croy] property," were merely "inquiring" as to his whereabouts, and had seen no criminal activity to justify any further intrusion into the curtilage. For his part, McCarron testified that he discovered the bag only after he and the third officer left the group of men at the driveway and began walking up the path to the shed.

The trial court found that the trailer was "next door" to the main property; that Gravitt had not invited any of the officers any further into the curtilage than the location of their initial encounter; and that Gravitt had not given the officers permission to reach the trailer by cutting across his own property. Construing the evidence most favorably to the trial court's findings and judgment,[9] we hold that the trial court did not clearly err when it concluded on the basis of these and other factual findings that the officers were engaged in an impermissible search of the curtilage when they discovered the bag of methamphetamine approximately 45 feet from the house.[10]

(b) "The indirect fruits of an illegal search or arrest should be suppressed when they bear a significantly close relationship to the underlying illegality."[11] All of the evidence seized in the course of subsequent searches of the property was obtained as a direct result of McCarron's impermissible intrusion into the curtilage, his discovery of the bag of methamphetamine there, and the accusations and alarm which followed that discovery. It follows that this evidence must also be suppressed as "fruit of the poisonous tree."[12]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

---

[8] Id. at 172 (1).

[9] *Kirsche*, supra.

[10] See *McGee v. State*, 133 Ga. App. 184, 186 (210 SE2d 355) (1974) (shed located 45 to 60 feet from house was within the curtilage); *Espinoza*, supra (garbage bag found seven to eight feet from driveway and approximately thirty yards from defendant's house was within curtilage); see also *Davis v. State*, 262 Ga. 578, 582 (2) (422 SE2d 546) (1992) (warrantless entry was not justified when there was no evidence that someone was inside the house or that officers and others standing outside the house were in danger).

[11] *State v. King*, 287 Ga. App. 680, 683 (652 SE2d 574) (2007) (punctuation and footnote omitted).

[12] Id.

DECIDED FEBRUARY 29, 2008.

Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney, for appellant.
Banks, Stubbs, Neville & Cunat, Rafe Banks III, Frank W. Hamilton, for appellees.