A08A0407. CASTANEDA v. THE STATE.
(664 SE2d 803)

RUFFIN, Presiding Judge.

Following a bench trial, John Castaneda was convicted of driving under the influence of an intoxicating substance ("DUI") and reckless driving.[1] He appeals the DUI conviction, arguing that the trial court erred in denying his motion to suppress. Castaneda also challenges the sufficiency of the evidence and contends that the trial court erred in denying his demurrers. He further alleges that he is entitled to a new trial based on the trial court's lack of impartiality. For reasons that follow, we affirm.

On appeal from his criminal convictions, Castaneda no longer enjoys a presumption of innocence.[2] Rather, we view the evidence in a light favorable to support the verdict, and we neither weigh the evidence nor determine witness credibility.[3] We will uphold the verdict so long as any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt.[4] So viewed, the evidence shows that on March 24, 2005, Officer Warren Hartley of the City of Fayetteville Police Department responded to a report of a traffic collision with injuries. When he arrived at the scene, he found Castaneda, another male, and two females standing beside Castaneda's car. The airbags on both the driver and passenger sides of the vehicle had deployed, and the front

---

[9] See, e.g., *State of Ga. v. Tucker*, 242 Ga. App. 3, 8 (3) (528 SE2d 523) (2000).

[1] The trial court found Castaneda not guilty of driving under the influence of drugs and failing to maintain a lane.

[2] See *Smith v. State*, 282 Ga. App. 255 (638 SE2d 388) (2006).

[3] See id.

[4] See id.

end was "severely damaged to the point that the engine was partially pushed back." There was also a second automobile approximately 30 to 40 feet away that had sustained substantial damage as well.

Based upon tire impressions in the grass that were made by and leading up to Castaneda's car, Hartley determined that the vehicle had exited the roadway and traveled over the curb, through the grass for "a good distance," and over a sidewalk. The vehicle then crossed over a street; hit a mailbox, knocking it down; traveled up a driveway; hit another vehicle, moving the second vehicle approximately 20 to 30 feet causing it to hit and knock down a basketball goal; and finally came to a stop in an open field adjacent to a house.

Hartley approached Castaneda and the male passenger, Joseph Marks, and "[i]mmediately upon making contact with them or getting within sight of them, . . . realized that there was something definitely not right with both of them." At the suppression hearing, Hartley testified that

> [m]y experience immediately told me that both of them were under the influence of inhalants based on their physical characteristics: [t]heir mannerisms, their stumbling about, their slurred speech, their lack of knowing anything about what was going on, or even where they were. They both had flushed complexions. Both of them had identical characteristics that pinpointed to me it was inhalants.

Hartley asked both Castaneda and Marks whether they had been "huffing," and they responded negatively. Castaneda then indicated that he would not answer any more questions until his father, an attorney, arrived. Emergency technicians evaluated Castaneda, and Officer Hartley then arrested him. Hartley then read Castaneda the implied consent notice, and Castaneda refused the testing, again stating that he wanted to speak to his father.

During his search of Castaneda's vehicle, Sergeant Glenn Askew found a store bag containing two aerosol cans of "Dust-Off" in the trunk, behind the back seat. The trunk was accessible from the passenger compartment of the car through the back seat, which was unlatched and partially open. One of the cans was noticeably lighter than the other, and the red safety tab was missing from both cans.

Michelle Singh, one of the women present when Officer Hartley arrived on the scene, testified at trial that she was in her house when she heard "a huge bang." She ran outside and saw Castaneda's vehicle, which had smoke coming from under the hood. According to Singh, the two men in the car were "passed out." Singh and her

sister, concerned about the smoke, hit and kicked the vehicle's window, but were initially unable to rouse them. Singh testified that

> [e]ventually, the . . . passenger . . . opened his door and kind of fell out of the car. . . . I think, because we were just banging and banging and banging, he finally came to. So he opened the door — he was kind of . . . discombobulated. . . . And then [Castaneda] . . . came to and he told [the passenger] basically to get back in the car and . . . let's go.

Castaneda tried unsuccessfully to start the car. Singh then saw the men turn around in their seats and shove what looked like "little aerosol cans" into the back seat. According to Singh, both men were "really out of it."

At the suppression hearing, Castaneda testified that he and Marks purchased two cans of Dust-Off at Best Buy; the store receipt indicates that the purchase was made at 4:09 p.m.[5] According to Castaneda, he put the cans in the trunk after he left the store. Castaneda stated that he was speeding, with the radio playing loudly, and talking, when he reached for his phone and tried to make a call. Castaneda then remembered waking up in his car after the collision, with Marks unconscious beside him.[6] Castaneda could not recall leaving the roadway, driving over the curb, traveling down the sidewalk, hitting the mailbox, or striking the other vehicle.

A Best Buy employee testified that the store sold two-packs of Dust-Off, an aerosol computer cleaning product. As packaged, the cans were wrapped in plastic and each can had a red safety top. The witness examined the Dust-Off cans found in Castaneda's car, and concluded that the plastic wrap and safety tabs were missing from the cans. The State also presented testimony that inhaling a vapor such as Dust-Off can result in dizziness, disorientation, short-term memory loss, and loss of consciousness.

The trial court denied Castaneda's motion to suppress and, following the bench trial, found him guilty of DUI and reckless driving.

1. Castaneda contends that the trial court erred in denying his motion to suppress because Officer Hartley lacked probable cause to arrest him. He argues that Hartley had limited experience with inhalant cases and had never arrested anyone for inhalant use who had not admitted the use. He also points to the defense testimony of experts who viewed the videotape of the arrest and concluded that he was functioning normally and that his condition was consistent with

---

[5] The EMT report indicates that the 911 call was received at 4:18 p.m.

[6] The collision scene was located approximately one mile from the Best Buy.

someone who had lost consciousness during a serious automobile collision. Castaneda further relies on expert testimony concluding that a law enforcement officer would be unable to immediately identify an inhalant user based on observation alone. Finally, Castaneda also points to the testimony of the paramedics who evaluated him at the scene and concluded that his vital signs were normal and that he was alert and oriented.

In reviewing a trial court's ruling on a motion to suppress, we are required to accept the trial court's decisions regarding findings of fact and witness credibility unless clearly erroneous.[7] And we "must also construe the evidence most favorable to the upholding of the trial court's findings and judgment and must not disturb the findings of the trial judge unless no evidence exists to support them."[8]

At the suppression hearing, Hartley testified that he was certified in field sobriety testing and had attended advanced drug and impaired driving programs. He had previous interactions with "an uncountable number of persons that have used inhalants," although he could only recall arresting "a few" inhalant users, each of whom admitted their use of inhalants. Hartley had investigated hundreds of traffic accidents in his eight years as a police officer, and, based on this experience, concluded that Castaneda's physical characteristics after the collision — including confusion, slurred speech, stumbling, and flushed complexions — were not caused by the accident and, instead, were consistent with inhalant use.

In addition to hearing Hartley's testimony, the trial court also saw photographs of the scene, including the tire tracks and damage to the mailbox and vehicles, and watched the videotape depicting the scene and Hartley's arrest and interactions with Castaneda. After considering all of the evidence, the trial court entered an order denying the motion, concluding that

> [t]he facts of this case show that, prior to the collision, the [d]efendant traveled off-road a considerable distance without taking any corrective action. Contrary to [Castaneda's] testimony that he lost control of his vehicle while reaching into his pocket for his cell phone, [Castaneda's] driving was more consistent with that of a driver who was unconscious at the wheel. Upon Officer Hartley's additional investigation, he observed that both [Castaneda] and his passenger exhibited symptoms consistent with that of persons using inhalants. [Castaneda's] appearance and conduct, coupled

---

[7] See *Parker v. State*, 233 Ga. App. 616, 617 (504 SE2d 774) (1998).
[8] Id.

with his manner of driving prior to the collision, were sufficient to establish probable cause for arrest.

"The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility."[9] To authorize an arrest for DUI, "an officer need only have knowledge or reasonably trustworthy information that the suspect was actually in physical control of a moving vehicle, while under the influence . . . to a degree which renders him incapable of driving safely."[10] Here, given Castaneda's conduct while driving, coupled with his physical condition at the scene, including stumbling, slurred speech, confusion, and difficulty balancing, Hartley had probable cause to arrest Castaneda for driving under the influence.[11]

2. Castaneda also challenges the sufficiency of the evidence to support his conviction for DUI. Specifically, he argues that the "circumstantial evidence . . . fell far short of [proof] of guilt in this case." We disagree.

Here, the evidence established that Castaneda purchased two cans of Dust-Off, wrapped in cellophane and bearing red safety tabs. Approximately nine minutes later, he drove his vehicle over a curb and a sidewalk, through the grass in a straight line — for, as characterized by the trial court, "a very considerable[ ] distance" — and across a street; struck a mailbox; and struck a car before coming to rest in an open field.[12] When Singh reached the damaged car after the collision, both Castaneda and his passenger were unconscious. When Castaneda awoke, he tried to drive away, but was unsuccessful. Singh then saw both men shove aerosol cans into the back seat. When the police searched the vehicle, they found two aerosol cans in the trunk, which was accessible from inside the car via the back seat, which was partially open. One of the cans was noticeably lighter than the other, and the plastic wrap and red tabs were missing from the cans.[13] When Hartley approached Castaneda and Marks, he immediately noticed symptoms that, based on his training and experience, were consistent with inhalant use. Castaneda, who refused to

---

[9] (Punctuation omitted.) *State v. Sledge*, 264 Ga. App. 612, 614 (591 SE2d 479) (2003).

[10] (Punctuation omitted.) Id.

[11] See *State v. Umbach*, 284 Ga. App. 240, 241-242 (643 SE2d 758) (2007); *Sledge*, supra; *Boyd v. State*, 259 Ga. App. 864, 865-866 (1) (578 SE2d 472) (2003); *Singleterry v. State*, 227 Ga. App. 155 (1) (489 SE2d 42) (1997); *Herkert v. State*, 177 Ga. App. 610 (1) (340 SE2d 251) (1986).

[12] Based upon the damage to the vehicles, one of the witnesses estimated that Castaneda was going approximately 30 miles an hour at the point of impact.

[13] Castaneda relies heavily on the fact that although the police found the aerosol cans inside a plastic bag, Singh did not recall seeing a bag. However, Singh testified that she was not focused on the cans or the men's actions, as she was primarily concerned with making sure they exited the smoking car.

undergo field sobriety or chemical testing, had no recollection whatsoever — even at trial — of leaving the roadway or striking the mailbox or the other vehicle. Given this evidence, the trial court was authorized to find Castaneda guilty of driving under the influence of intoxicating substances.[14]

3. Castaneda further alleges that the trial court erred in denying his special and general demurrers based on the insufficiency of the indictment, which failed to specify the precise impairing substance. But Castaneda pled not guilty to the indictment before he filed his special and general demurrers seeking specificity, and thus, has waived this argument.[15]

4. Castaneda argues for the first time on appeal that the trial court should have granted a new trial because the court "took on the role [of] an advocate of the prosecution rather than acting as an impartial judge." Castaneda did not raise this argument before the trial court and therefore has not preserved it for appellate review.[16]

*Judgment affirmed. Andrews and Bernes, JJ., concur.*

DECIDED JULY 2, 2008.

*Head, Thomas, Webb & Willis, William C. Head*, for appellant.
*Jamie K. Inagawa, Solicitor-General, Joseph B. Myers, Jr., Assistant Solicitor-General*, for appellee.

---

[14] See *Stewart v. State*, 288 Ga. App. 735, 736 (655 SE2d 328) (2007) (evidence sufficient for DUI conviction where defendant drove off the roadway, leaving no evidence of brake marks, and landed in a ditch; police found empty alcohol bottles in the vehicle; defendant's face was flushed, he smelled of alcohol and slurred his speech, and he seemed confused; and defendant did not complete field sobriety or chemical testing); OCGA § 40-5-67.1 (b) (2) (a defendant's refusal to submit to a state-administered chemical test of his or her blood, breath, urine, or other bodily substance is admissible as evidence of intoxication).

[15] See *Edmond v. State*, 283 Ga. 507, 510 (5) (661 SE2d 520) (2008) (defendant's " 'failure to file his special demurrer seeking additional information before pleading not guilty to the indictment constitutes a waiver of his right to be tried on a perfect indictment' "); *Croft v. State*, 278 Ga. App. 107, 109-110 (3) (628 SE2d 144) (2006).

[16] See *Gordon v. State*, 235 Ga. App. 169 (2) (508 SE2d 782) (1998) (" '[I]ssues and objections not raised at trial cannot be raised for the first time on appeal because they are deemed waived.' "). See also *Hernandez v. State*, 274 Ga. App. 390, 392 (6) (617 SE2d 630) (2005); *Florence v. State*, 246 Ga. App. 479, 482 (9) (539 SE2d 901) (2000).