**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 29, 2014**

# In the Court of Appeals of Georgia

A14A0527. THE STATE v. CRISWELL.

R<small>AY</small>, Judge.

Cristopher Criswell was charged with driving under the influence of alcohol, less safe (OCGA § 40-6-391 (a) (1)). He moved to suppress the evidence regarding statements he made to police officers and evidence related to the administration or refusal of any field sobriety tests or State-administered chemical breath tests. After a hearing, the trial court granted his motion in part. The trial court found that the testimony of an officer, as to his observation of certain signs of impairment while he was standing 12 to 15 feet away from Criswell, was not credible. The trial court additionally found that observations the officer made while in closer contact with Criswell had to be suppressed because the officer's entry onto Criswell's driveway amounted to an illegal second-tier encounter for which the officer lacked reasonable,

articulable suspicion. Finally, the trial court found that the officer lacked probable cause to arrest Criswell. The State filed this appeal arguing, inter alia, that the officer's entry onto Criswell's property was legal and that the trial court's other determinations resulting from that initial error must be overturned. We agree.

> In reviewing the grant or denial of a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment. When the trial court's findings are based upon conflicting evidence, we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept that court's credibility assessments unless clearly erroneous.

(Footnote omitted.) *McCormack v. State*, 325 Ga. App. 183, 184 (1) (751 SE2d 904) (2013). However, "[w]here, as here, [an] issue turns on the question of whether a trial court committed an error of law in granting a motion to suppress, we apply a de novo standard of review. The appellate court owes no deference to the trial court's conclusions of law." (Punctuation and footnotes omitted.) *State v. Gauthier*, __ Ga. App. __ (Case No. A13A2430, decided March 21, 2014).

The evidence, which included a police video of the incident that was played for the trial court,[1] shows that at about 1:43 a.m. on January 26, 2013, Officer Stephen Cohen of the Holly Springs Police Department was dispatched to a residential address after a person there called police to say that a vehicle was blocking her driveway. Police found Matthew Jenkins passed out behind the wheel. After rousing Jenkins, officers began questioning him. Officers could smell alcohol, and Jenkins appeared inebriated and admitted he had been drinking. Jenkins stated that he was staying with someone in the house next to the residence whose driveway he was blocking.

While officers were questioning Jenkins, another vehicle came down the street and parked in the driveway of the home where Jenkins told officers he was staying. Another officer who was accompanying Cohen, Sergeant Cullen LaFrance of the Holly Springs Police Department, walked over to talk with the driver of the other vehicle. That driver was Criswell.

LaFrance testified that he wanted to talk to Criswell to determine whether Jenkins actually belonged in the neighborhood and to verify Jenkins' story as to why he was there. LaFrance made his initial contact with Criswell when he was standing

---

[1] Criswell's trial counsel stipulated to the admission of the entire video into evidence, and we have reviewed the appropriate segment.

3

12 to 15 feet away from him. Their initial contact was consensual. LaFrance then walked up the driveway toward Criswell. LaFrance testified that "[a]s I was walking up his driveway, he was exiting his vehicle and I could tell he was unsteady on his feet as he got out of the car and had to use the door for balance as he closed it. . . . He walked to the back bumper of his car." LaFrance stated that at this point, he was standing "maybe 15 feet *in* [Criswell's] driveway[,]" (emphasis supplied), and that he then walked to the rear bumper of Criswell's car, where the two engaged in conversation. The undisputed testimony shows that Criswell walked toward the officer, not away from him. LaFrance observed that Criswell's "speech was slurred. He had red, bloodshot, watery eyes and he had the strong odor of alcoholic beverage on his breath and person." LaFrance testified that he and Criswell then

> walked . . . to the end of the driveway . . . so [Criswell] could identify Mr. Jenkins[.] . . . So from the time that I observed where he was, he gets out of the car. I made observations; he walks to the rear of his bumper. I asked if he knew [Jenkins]. He asked who it was. I asked if he recognized the truck. We had a conversation about that for a minute.

On the police video, LaFrance can be heard asking Criswell how much alcohol he has had to drink. Criswell denied drinking. Although the police video provides an

4

audible record of the conversation between LaFrance and Criswell, they are not visible on most of the video because Jenkins' truck blocks the camera's view of them.

1. The State argues that the trial court erred in determining that LaFrance's warrantless entry onto Criswell's property was an illegal second-tier encounter. Finding error, we agree.

In its order, the trial court wrote that, "[t]he decision to grant this motion is based largely upon the credibility of Sgt. LaFrance's testimony in this case." It is clear from the context of the trial court's order that this statement relates to the trial court's disbelief that LaFrance could have smelled alcohol and observed Criswell's bloodshot eyes from 12 to 15 feet away. The trial court specifically noted LaFrance's observations of Criswell's

> eye manifestations of impairment, balance issues, slurred speech, and the odor of alcohol. Although this [c]ourt acknowledges that typically all of these manifestations would be sufficient probable cause to arrest for DUI, in this particular case they cannot be properly considered. *There is no way that Sgt. LaFrance could possibly have seen the eye manifestations during any consensual part of the encounter. The consensual part of the encounter occurred when there was a distance of twelve to fifteen feet between the Defendant and the officer. At that distance with the poor lighting conditions, there is no way that Sgt. LaFrance could have seen the eye manifestations of impairment. There*

5

*is also no way that Sgt. LaFrance could have smelled an odor of alcoholic beverage on the Defendant's breath at that distance.* Both the eye manifestations and the odor knowledge must have been gained by the Officer at a short distance away from the Defendant.

(Emphasis supplied.) The trial court found, inter alia, that "[t]he only time that Sgt. LaFrance was close enough to the Defendant to notice these things was . . . when Sgt. LaFrance stepped onto the Defendant's property[.]" The trial court then reasoned that this entry onto Criswell's property was an illegal second-tier encounter for which the officer lacked reasonable articulable suspicion because the only manifestations that the officer legally observed occurred when he was 12 to 15 feet away – that is, the balance issues, slurred speech, and confusion – and that these were insufficient to create reasonable, articulable suspicion.

The undisputed facts show that the officer's initial encounter with Criswell took place from 12 to 15 feet away, when he was standing in Criswell's yard. The trial court found this contact to be consensual, and this issue is not before us on appeal. The undisputed testimony shows that LaFrance then walked onto Criswell's driveway, and it is this entry onto the property that the trial court found to an illegal second-tier encounter. This decision is error.

We need not make any decision regarding the trial court's determination as to LaFrance's credibility as it relates to his observations from his initial contact when he was standing 12 to 15 feet away from Criswell. Indeed, the credibility of witnesses and the weight to be accorded their testimony lies solely with the trier of fact. *Tate v. State*, 264 Ga. 53, 56 (3) (440 SE2d 646) (1994). We address only the legality of LaFrance's entry onto Criswell's driveway.

> Under the Fourth Amendment, police officers are prohibited from entering a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances. This broad rule is subject to the exception that any visitor, including a police officer, may enter the curtilage of a house when that visitor takes the same route as would any guest, deliveryman, postal employee, or other caller.

(Punctuation and footnotes omitted.) *State v. Gravitt*, 289 Ga. App. 868, 870 (2) (a) (658 SE2d 424) (2008). The United States Supreme Court has defined four factors to be used in analyzing the extent of a home's curtilage:

> the proximity of the area claimed to be in curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

7

(Citations omitted.) *United States v. Dunn*, 480 U.S. 294, 301 (II) (107 SCt 1134, 94 LE2d 326) (1987). A determination of whether evidence is discovered in the protected curtilage of a home is a mixed question of law and fact. *Gravitt*, supra at 871 (2) (a). As neither party disputes that the officer was standing in the driveway, our review of the application of the law to the facts is de novo, and we will not disturb the trial court's factual findings if there is any evidence to support them. Id. at 868.

Here, the video shows that Criswell's driveway was open to the street, and had no gates, fences, or bushes blocking a visitor's access or visibility. The driveway in the instant case is clearly the same route that would be used by "any guest, deliveryman, postal employee, or other caller." (Punctuation and footnote omitted.) Id. at 870 (2) (a). Our Supreme Court has recognized that the "Fourth Amendment does not cover police observations from places where visitors are expected, such as walkways, *driveways*, and porches." (Citation omitted; emphasis supplied.) *Espinoza v. State*, 265 Ga. 171, 173 (2) (454 SE2d 765) (1995). When LaFrance walked up Criswell's driveway, he was in an area that our appellate courts have determined is not within the protected curtilage of the home and is not protected by the Fourth Amendment. The officer's actions in this encounter fell within the realm of a first-tier

police-citizen encounter and did not amount to a stop. See *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002). Thus, this contact was not subject to a reasonable articulable suspicion standard. See *Durrance v. State*, 319 Ga. App. 866, 868-869 (1) (b) (738 SE2d 692) (2013) (officer did not need reasonable suspicion to approach defendant's stopped vehicle.)

2. The State next argues that the trial court erred in determining that LaFrance's testimony was not credible as it related to his ability to see Criswell's bloodshot eyes and to smell alcohol on his breath and person. The trial court made this credibility determination on the basis that the *only* time Criswell could have legally made these observations was when he was standing 12 to 15 feet away – too far, given the lighting conditions, for him actually to have noted these potential indicia of drunkenness. The trial court made no credibility determinations as to any police testimony related to what the officer observed while he was in Criswell's driveway.

Of course, the "[c]redibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." (Citation omitted.) *Tate*, supra at 56 (3). Here, however, we need not examine the trial court's credibility

9

determinations as they relate to LaFrance's observations of Criswell from 12 to 15 feet away. The trial court clearly found that

> [b]oth the the eye manifestations and the odor knowledge *must have been gained by the [o]fficer at a short distance away from the Defendant.* The only time that Sgt. LaFrance was close enough to the Defendant to notice these things was either *when Sgt. LaFrance stepped onto the Defendant's property* or after he ordered him into the roadway.

(Emphasis supplied.) Because we found in Division 1 that the officer was legally on Criswell's driveway, to the extent that the officer made these observations from the driveway, where his undisputed testimony shows he and Criswell moved toward each other and met at Criswell's bumper, the trial court made a legal error in suppressing the evidence gleaned from these observations. See *Peeler v. State*, 286 Ga. App. 400, 405 (2) (c) (649 SE2d 775) (2007) (officer's observations of defendant's car and tag number, while officer stood in driveway, did not violate Fourth Amendment because officer "had taken the same route as would any guest, deliveryman, postal employee or other caller") (citation and punctuation omitted). See also *State v. Silva*, 263 Ga. App. 371, 373 (587 SE2d 762) (2003), affirmed by *Silva v. State*, 278 Ga. 506 (604 SE2d 171) (2004) (no Fourth Amendment violation where officer detected "plain smell" of marijuana from place where he was lawfully present).

10

3. The State also argues that the trial court erred in finding that LaFrance lacked a reasonable, articulable suspicion to demand that Criswell come to the street so that the officer could determine whether he was under the influence of alcohol, and that the trial court erred in finding that LaFrance lacked probable cause to arrest Criswell for driving under the influence of alcohol.

On the video, the officer can be heard asking Criswell if he knows who is in the other vehicle. Criswell did not initially answer these questions in any intelligible way. He acknowledged knowing Jenkins only after the officer told him Jenkins' name. He first stated that Jenkins did not live with him and later stated that Jenkins was staying with him. A few seconds after this conversation, LaFrance can be heard telling Criswell to "[c]ome out here[.]" LaFrance almost immediately went on to say, "I am going to ask you one more time to come out here, one more time, or I will lock you up. You with me?" LaFrance then told Criswell that he needed to come to the street

> because you have been drinking. You just drove in. Therefore, it is a DUI if you have been drinking to the legal limit. That make sense? Now we can play this, and you can be an ass, or you can walk out here with me, you understand? We can play ball either way.

After arguing that he is at home and in his own driveway, and claiming that he walked home, Criswell finally complied with the officer and came to the street, where he refused testing related to his consumption of alcohol. He was arrested for driving under the influence. While one of the officers read him the implied consent warning, Criswell can be heard speaking over the officer, moaning, and saying, "Blah, blah, blah, blah . . . ."

The trial court found that

[a]t the point that Sgt. LaFrance ordered the Defendant into the roadway, he changed the nature of the encounter from Tier 2 to a Tier 3 encounter. The Defendant's decision to enter the roadway and to engage in further conversation with Sgt. LaFrance cannot be considered a voluntary action because he did so only after being threatened with a physical arrest. Clearly, Sgt. LaFrance lacked probable cause at that time to arrest the Defendant for anything. . . . Since Sgt. LaFrance could only have gained knowledge of eye manifestations and the odor during the non-voluntarily[sic]/illegal portions of the encounter, this [c]ourt can only consider the information the officer gained during the Tier 1 portion of the encounter.

The trial court's ruling as to whether the officer had probable cause to arrest Criswell is, again, based on its erroneous legal determination that LaFrance made an

illegal second-tier entry onto Criswell's driveway. As we determined in Division 1, this is not the case.

> At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.

(Citations omitted.) *Brittian*, supra at 731. Here, as Criswell was getting out of his car as the officer approached him in his driveway and began speaking to him, there was no stop, only a first-tier encounter. "Once [LaFrance] was close to [Criswell], he noticed the odor of alcohol and bloodshot eyes and, at that point, had the required articulable suspicion to continue his inquiry." Id. See *Daniels v. State*, 321 Ga. App.

13

748, 750 (2) (743 SE2d 440) (2013) (once officer noticed odor of alcohol and defendant's bloodshot eyes, he had reasonable, articulable suspicion to continue investigating); *Whitmore v. State*, 289 Ga. App. 107, 109 (657 SE2d 1) (2008) (alcohol smell alone gave police sufficiently reasonable and articulable suspicion to administer field sobriety tests). Thus, the trial court erred in finding that LaFrance lacked reasonable, articulable suspicion for this encounter.

The officer next ordered Criswell to come to the street or face being locked up.

The facts necessary to establish probable cause for arrest are much less than those required to prove guilt beyond a reasonable doubt at trial; the test merely requires a probability—less than a certainty but more than a mere suspicion or possibility. Sufficient probable cause to conduct a DUI arrest only requires that an officer have knowledge that the suspect was actually in physical control of a moving vehicle while under the influence of alcohol to a degree which renders him incapable of driving safely.

(Citation and punctuation omitted.) *Brown v. State*, 302 Ga. App. 272, 274 (1) (690 SE2d 907) (2010). OCGA § 40-6-391 (a) (1) provides that a person shall not drive or be in physical control of a moving vehicle while "[u]nder the influence of alcohol to the extent that it is less safe for the person to drive[.]"

14

LaFrance saw Criswell drive down the street and into his driveway. He did not see Criswell drive in an unsafe manner. However, a driver need not actually commit an unsafe act in order to be under the influence to the extent it is less safe to drive. *Brown*, supra at 273 (1). Here, the officer observed Criswell driving his vehicle immediately before he observed Criswell's bloodshot eyes, alcoholic odor, unsteadiness, confusion, and slurred speech. *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996) (even absent field sobriety tests, officer's observations that defendant had bloodshot, watery eyes and smelled of alcohol provided sufficient probable cause to arrest). See also *Castaneda v. State*, 292 Ga. App. 390, 393-394 (1) (664 SE2d 803) (2008) (defendant's stumbling, slurred speech, confusion, and balance difficulties provided probable cause for DUI arrest, even when some of these symptoms could have been caused by an immediately preceding accident).

Accordingly, the trial court erred in its grant of Criswell's motion to suppress. See *Gauthier*, supra (grant of defendant's motion to suppress reversed where trial court committed legal error in finding that officers lacked reasonable articulable suspicion to stop defendant, and lacked probable cause to arrest and require a chemical test).

*Judgment reversed. Andrews, P. J., and McFadden, J., concur.*