**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**September 23, 2014**

# In the Court of Appeals of Georgia

A14A1119. HOLLAND v. THE STATE.

BRANCH, Judge.

After he was involved in an automobile accident, Donnie G. Holland's blood was tested which eventually led to his conviction for driving under the influence of a controlled substance. On appeal, Holland contends the trial court erred by denying his motion to suppress the blood test results, overruling his chain-of-custody objection to the blood test results, and denying his motion for a directed verdict. For the reasons that follow, we affirm.

1. Holland contends the trial court erred by denying his motion to suppress his blood test results. He argues that his blood was seized in violation of the Fourth

Amendment because the arresting officer had no probable cause[1] to arrest and therefore no basis to seek a blood test. He also argues that the arresting officer's determination that Holland was under the influence of alcohol or drugs was not credible.

A trial judge's findings of fact on a motion to suppress should not be disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed in favor of the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *Jackson v. State*, 258 Ga. App. 806, 807-808 (2) (575 SE2d 713) (2002). "When reviewing a trial court's ruling on a motion to suppress, we may consider trial testimony in addition to the testimony submitted during the motion to suppress

---

[1] In Georgia, a person is required to submit to a chemical test of his blood, breath, urine, or other bodily substances (1) "if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391" or (2) "if such person is involved in any traffic accident resulting in serious injuries or fatalities," OCGA § 40-5-55 (a), "*and* the investigating law enforcement officer has probable cause to believe that the individual was driving under the influence of alcohol or other drugs." *Hough v. State*, 279 Ga. 711, 713 (1) (a) (620 SE2d 380) (2005) (emphasis in original). Thus, as applied to the present case, under either scenario set forth in OCGA § 40-5-55 (a) and *Hough*, the officer must have had probable cause to believe that Holland was driving under the influence in order to require him to submit to the blood test.

hearing." *Postell v. State*, 279 Ga. App. 275, 276 (1) (630 SE2d 867) (2006) (citation and punctuation omitted).

At the hearing on Holland's motion to suppress and at trial, the State presented evidence to show that on June 28, 2011, State Trooper Michael Garmon was called to investigate an accident. Garmon determined that Holland was driving a pickup truck, that Holland was attempting to turn left, i.e., southbound, onto U. S. Highway 27, that Holland failed to yield to traffic, and that he was struck by a northbound patrol car driven by Carroll County Deputy Thomas Lanning. Garmon attempted to speak with Holland at the scene but Holland was "a little hysterical at the time" and he did not provide any information. Garmon admits that he did not gain any information at the scene to suggest that Holland was under the influence of drugs or alcohol. Although Holland testified that he did not see the police car, hear a siren, or see emergency lights, Officer Lanning testified at trial that at the time of the collision his blue lights and siren were activated and that he gave this information to Garmon at the hospital.

At the hospital where Holland was taken following the accident, Garmon questioned Holland again. Garmon observed that Holland was "a little slow in responding," that his speech was slurred, that he was "a little withdrawn," and that his

3

eyes were "very bloodshot and watery." Garmon asked Holland whether he was taking any medications, and Holland responded that he took Lorcet and Soma on a daily basis and that "it makes [me] sleepy . . . just like I am now." When Garmon asked why Holland pulled out in front of the other vehicle, Holland replied that he "had the cars beat, but the officer didn't know." Garmon then conducted the horizontal gaze nystagmus ("HGN") on Holland while Holland lay in his hospital bed. Garmon observed four "clues": "lack of smooth pursuit" and "distinct nystagmus at maximum deviation" in each of Holland's eyes. Garmon testified that any more than two HGN "'clues' indicates a certain level of impairment." Based on these observations, Garmon concluded that Holland was under the influence of drugs, and he therefore arrested Holland for driving under the influence of drugs and read Holland the Georgia Implied Consent Notice. Holland consented, his blood was drawn and tested, and Garmon instructed Holland to turn himself in upon his release from the hospital.

When reviewing a question of probable cause, one must remember that

> [t]he facts necessary to establish probable cause for arrest are much less than those required to prove guilt beyond a reasonable doubt at trial; the test merely requires a probability - less than a certainty but more than a mere suspicion or possibility. Sufficient probable cause to conduct a DUI arrest only requires that an officer have knowledge that the suspect was actually in physical control of a moving vehicle while under the

4

influence of alcohol [or drugs] to a degree which renders him incapable of driving safely.

*Brown v. State*, 302 Ga. App. 272, 274 (1) (690 SE2d 907) (2010) (citation and punctuation omitted). Here, Garmon learned that Holland appeared to have caused an accident, that he was taking Lorcet and Soma which made him sleepy, that his eyes were bloodshot and watery and his speech slurred, and that the HGN test indicated Holland was impaired. Construed in favor of the trial court's decision, there was some evidence to support the conclusion that Garmon had probable cause to arrest Holland for driving under the influence of a drug. We therefore find no error in the trial court's decision and affirm. *State v. Criswell*, 327 Ga. App. 377, 384 (3) (759 SE2d 255) (2014) (evidence of Criswell's bloodshot eyes, alcoholic odor, unsteadiness, confusion, and slurred speech were sufficient to support a finding of probable cause to arrest for driving under the influence); *Castaneda v. State*, 292 Ga. App. 390, 393-394 (1) (664 SE2d 803) (2008) (defendant's confusion, slurred speech, stumbling, and flushed complexion, together with the nature of the car accident itself, provided probable cause for DUI arrest); *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996) (officer's observations that defendant "had bloodshot, watery eyes

and exuded an odor of alcohol" provided sufficient probable cause to arrest) (citations omitted).

2. Holland contends the trial court erred by overruling his objection to the blood-test evidence on the ground that the State failed to show the chain of custody of that evidence.

> Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not negate every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence.

*Mickens v. State*, 318 Ga. App. 601, 602 (1) (734 SE2d 438) (2012) (punctuation and footnote omitted). This Court will not overturn a trial court's decision on the adequacy of the chain-of-custody evidence absent an abuse of discretion. *Clowers v. State*, 324 Ga. App. 264, 271 (5) (b) (750 SE2d 169) (2013).

Here, the State introduced evidence to show that on the day of the accident, Garmon, who identified Holland at trial as the same person he arrested and submitted

6

for a blood test, provided hospital lab technician Jessica Nation[2] a blood test kit and witnessed Nation draw Holland's blood and place the specimen back in the kit, seal it, and return it to Garmon. Nation confirmed in her testimony that Garmon requested a blood test of a man named Donnie Holland and that she performed it. Nation testified that prior to sealing the kit, she put Holland's name on the collection tubes that she sealed in the kit. Garmon carried the kit back to his post in Villa Rica and placed it in a box in the secretary's office, from which United Parcel Service picks up the kits and delivers them to the GBI crime lab. An employee of the lab testified that she received the kit on July 1, 2011, checked to ensure that the seals on the collection tubes were intact, and photographed the collection tubes; the photograph was introduced into evidence. The blood was then tested and retested, and the test showed the presence of the cocaine metabolite benzoylecgonine. The above testimony was sufficient to establish with reasonable certainty that the blood test results were those of Holland.

On appeal, Holland argues that several anomalies in the testimony and the evidence suggest that the blood tested may have been that of someone other than

---

[2] Nation was married after the dates in question, and her name at the time of trial was Jessica Wadley.

Holland. Holland argues that there was a passenger in his car who may have had his blood tested that day. He points out that the blood test request form that Garmon gave to Nation shows that the blood collector's name was initially written as "Sandra Byrd" but later changed to "Jessica Nation" and that no one initialed the change. Holland points to the fact that there are slight discrepancies in Garmon's and Nation's testimony about Holland's condition at the time of the blood test. And Holland argues that his blood test results should have shown the presence of his prescription medication but did not. But resolution of conflicting or contradictory evidence is for the finder of fact, not this Court. Moreover, "a chain of custody argument goes to the weight and credit a factfinder assigns to the evidence, rather than to its admissibility." *Ross v. State*, 313 Ga. App. 695, 698 (1) (c) (722 SE2d 411) (2012) (citation and punctuation omitted). We find no abuse of discretion by the trial court in allowing the issue of chain of custody to go to the jury.

3. Holland also challenges the sufficiency of the evidence.

"On criminal appeal, appellant is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict. This Court does not reconsider evidence or attempt to confirm the accuracy of testimony. Assessing a witness's credibility is the responsibility of the factfinder, not this Court."

8

*Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citations and punctuation omitted). Instead, we review the case "to determine if the evidence, when viewed in the light most favorable to the prosecution, supports the verdict." *Willis v. State*, 263 Ga. 597, 598 (1) (436 SE2d 204) (1993), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

In Georgia it is illegal for a person to operate a vehicle while there is any amount of a controlled substance or its metabolites or derivatives in his or her blood or urine. OCGA § 40-6-391 (a) (6).[3] Here, the State presented evidence to show that while driving a truck, Holland was involved in an accident at an intersection, which led to an investigation of whether Holland was driving in violation of Georgia law. A blood test revealed that Holland had benzoylecgonine, a metabolite of the controlled

[3] This Code section provides in relevant part as follows:

A person shall not drive or be in actual physical control of any moving vehicle while . . . there is any amount of marijuana or a controlled substance, as defined in Code Section 16-13-21, present in the person's blood or urine, or both, including the metabolites and derivatives of each or both without regard to whether or not any alcohol is present in the person's breath or blood.

Cocaine and its derivatives are classified as controlled substances. OCGA § 16-13-26 (1) (D).

9

substance cocaine, in his blood. The evidence was therefore sufficient to sustain the conviction. See, e.g., *Page v. State*, 296 Ga. App. 431, 437 (3) (674 SE2d 654) (2009) ("the state was required to prove that Page was in actual physical control of a moving vehicle when benzoylecgonine, a metabolite of a controlled substance, was present in her blood"). The trial court therefore did not err by denying Holland's motion for a directed verdict.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*