**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 16, 2012**

# In the Court of Appeals of Georgia

A12A1190. MICKENS v. THE STATE.                                    DO-046 C

DOYLE, Presiding Judge.

Nelson Mickens appeals from the denial of his amended motion for new trial following his conviction by a jury of aggravated assault[1] and rape.[2] He contends that (1) the State failed to establish a proper chain of custody for the evidence; (2) the trial court erroneously failed to dismiss a juror or grant a mistrial based on a juror's alleged misconduct; (3) the trial court improperly commented on the evidence; (4) the trial court gave an improper jury charge on the length of its deliberation; (5) trial counsel was ineffective; and (6) the evidence was insufficient to support the conviction. Finding no merit to these arguments, we affirm.

---

[1] OCGA § 16-5-21 (a) (1).

[2] OCGA § 16-6-1 (a) (1).

Construed in favor of the verdict,[3] the evidence shows that at approximately 9:00 p.m. one evening in December 2004, J. O. was stopped at a gas station after leaving early from her shift as an exotic dancer. Mickens was at the gas station in his vehicle and stopped J. O. to ask her for directions. As they spoke, Mickens pushed J. O. into his car and drove her to a nearby motel parking lot, where he forcibly had sexual intercourse with her in his car. Mickens then drove her back to the gas station, pushed her out of her car, and drove away. J. O. went home and called her fiancee, who took her to the police station. After speaking with police, J. O. was taken to a hospital, where a rape examination kit was used to take cervical and vaginal swabs.

Laboratory analysis of the swabs determined a DNA profile and showed the presence of sperm cells. The DNA profile was submitted to state and national law enforcement databases, and in 2007, a DNA profile was entered into a database in Columbus, Ohio, that matched the DNA taken from J. O.'s rape kit. Based on the match, a Georgia detective drove to Ohio and obtained a search warrant to sample the saliva of the suspect producing the matching DNA, which suspect turned out to be Mickens, who had recently been incarcerated in Ohio. The detective collected swabs from Mickens's mouth and drove them back to Georgia for comparison to the DNA

---

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

2

from J. O.'s rape kit. The Georgia Bureau of Investigation performed an analysis and determined that Mickens's cheek swab matched the DNA collected from J. O.'s rape kit.

Mickens was charged with J. O.'s rape, aggravated assault, and kidnapping. Following a jury trial, including similar transaction evidence showing that Mickens had raped another exotic dancer late at night in his car on a public street, Mickens was convicted of rape and aggravated assault, but acquitted of kidnapping. The trial court denied his amended motion for new trial, giving rise to this appeal.

1. Mickens contends that the State failed to establish a proper chain of custody for the forensic evidence from the rape kit and his mouth swab.

> Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not [negate] every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.[4]

---

[4] (Citations and punctuation omitted.) *Hurst v. State*, 285 Ga. 294, 296 (2) (676 SE2d 165) (2009).

3

(a) *Mickens's mouth swabs.* To demonstrate the chain of custody of the mouth swabs, the State offered testimony from the detective, who personally collected them from him in Ohio. She testified that she placed the swabs in an envelope, which she then sealed with tape, and the detective wrote her initials over the tape to confirm that she was the person who had secured the swabs. The detective then stored them in a secured evidence lock box in Georgia and later retrieved them and transported them to a secured lock box at the GBI. A GBI forensic biologist also testified and confirmed that the swabs had been placed in the GBI lockbox and were properly sealed, but they lacked proper initials.

Mickens argues that the lack of initials and the lack of testimony from the Georgia police evidence custodian demonstrate a failure in the chain of custody. But "[i]n proving chain of custody, the [S]tate is not required to show that the substance was guarded each minute it is in one's custody. The [S]tate need only show with reasonable certainty that the substance tested is the same as that seized, with no tampering or substitution."[5] Here, the testimony offered at trial confirmed that the swabs had been packaged properly, were properly identified and sealed upon arrival

---

[5] (Punctuation and citation omitted.) *Smith v. State*, 291 Ga. App. 353, 355 (3) (662 SE2d 176) (2008).

at the GBI, and were properly handled thereafter. The swabs were stored in locked law enforcement facilities, each witness who retrieved them testified as to their condition and labeling, and there was no evidence of tampering or contamination. In light of the record before us, we discern no error in admitting the mouth swabs.

(b) *Rape kit evidence*. With respect to the evidence from J. O.'s rape kit, the trial evidence included testimony from the nurse who gathered samples from J. O., sealed and labeled them, and gave them to a police officer. An officer transported the sealed container to an investigator, who testified that the container was sealed properly and that he personally delivered it to the GBI. The GBI shipped the samples to two labs, both of which documented the GBI's required chain of custody procedures. There was again no evidence of tampering or contamination, and the trial court properly admitted this evidence.[6]

2. Mickens contends that the trial court erred by failing to dismiss a juror or grant a mistrial after the juror wrote a note stating, "There is no question about she was raped, but the matter of who? What percentage of error the DNA could be? Is it 100% correct?" The note was passed to the bailiff late one afternoon just prior to

---

[6] See id. See also *Hines v. State*, 307 Ga. App. 807, 811 (2) (706 SE2d 156) (2011) (real issue is not fungibility of DNA evidence, but contamination or mishandling).

5

stopping for the day, and the trial court notified counsel of the note the next day. Mickens moved for a mistrial, and the trial court denied the motion. Later in the trial, the State suggested that the trial court endeavor to identify the juror and that the juror could be replaced with an alternate if needed. The juror was identified, and defense counsel requested that he be asked if he had communicated his question to any of the other jurors. Defense counsel stated that he had no other question of the juror at that time. When asked by the court, the juror explained that he had not communicated with any other juror about his question, and he had not yet made up his mind about whether Mickens was guilty of committing the rape. The court reminded the juror not to communicate with the other jurors and sent him back to the jury room. Mickens then renewed his motion for a mistrial and requested that the juror be replaced. Both motions were denied.

> There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown[,] and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. However, we have also recognized that some irregularities are inconsequential. The decision whether to remove a juror from a panel

6

lies within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.[7]

Here, the trial court's questioning revealed that the juror had not spoken to any other jurors about his question to the court, and the juror explained that, consistent with his note, he had not decided whether Mickens was guilty of the rape. The trial court cautioned the juror not to speak to the other jurors about the case until deliberations began. Further, the State's case was essentially focused on identity, which was the very issue that the juror stated he had not resolved. Under these facts, we conclude that the trial court did not abuse its discretion by keeping the juror or denying the motion for mistrial.[8]

3. Mickens argues that the trial court improperly questioned the State's DNA expert witness during the following colloquy:

---

[7] (Punctuation omitted.) *Tolbert v. State*, 300 Ga. App. 51, 53 (2) (684 SE2d 120) (2009).

[8] See *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997) ("in order for juror misconduct to upset a jury verdict, it must have been so prejudicial that the verdict is deemed inherently lacking in due process") (punctuation omitted).

Court: What degree of possibility of mistaken identity exists with DNA testing have you been able to determine, please ma'am?[9]

Witness: No two people, with the exception of identical siblings, will have the exact same DNA. And in this case a frequency was developed by the next person that's going to testify . . . that can tell us how often you should see this profile.

Court: Any other questions? . . . I didn't want to interfere, I was just – I had a curiosity question.

Mickens argues that this colloquy violated OCGA § 17-8-57, which provides that it is error for a trial judge "to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." But the trial court merely questioned the witness and did not express or intimate an opinion as to what had been proven or as to the import of the witness's answer.[10] "A trial judge may propound questions to a witness to develop the truth of the case or to clarify testimony, and the extent of

---

[9] The court asked this question before the juror passed the aforementioned note to the bailiff.

[10] Compare *State v. Anderson*, 287 Ga. 159, 161 (1) (659 SE2d 26) (2010) (trial court's statement "I just wanted to make sure" following the court's questioning of the witness as to venue constituted an expression of opinion that venue had in fact been proven.).

8

such an examination is a matter for the trial court's discretion."[11] Because the trial court's question did not improperly comment on the evidence, we discern no error.

4. Mickens next argues that the trial court gave an improper *Allen*[12] charge and failed to declare a mistrial when the jury sent the court the following question during its deliberation: "What's the definition of a hung jury? How long deliberation before hung jury?" The trial court called the jury in and explained as follows:

> Of course, the definition of a hung jury is self explanatory. How long do you deliberate before a jury is hung? You take into consideration the efforts, money spent, time[,] and effort the lawyers have put trying to get all these witnesses from wherever they come from and to the trial of the case and then give the jury a reasonable time. Up until this point a reasonable time is nowhere near. That's the best answer I can give you. . . Remember, you are judges of the – judges of the evidence presented and not an advocate for either party.

"The central inquiry in reviewing an *Allen* charge is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than

---

[11] (Citation omitted.) *Finley v. State*, 286 Ga. 47, 51 (9) (a) (685 SE2d 258) (2009).

[12] *Allen v. U. S.*, 164 U. S. 492 (17 SC 154, 41 LEd 528) (1896).

9

those based upon the trial or the arguments of other jurors."[13] In this case, the challenged instruction was given at lunch time on the first full day of deliberations after adjourning at 5:00 p.m. the prior day following approximately 30 minutes of deliberation. The court's response to the jury's question did not suggest an outcome or its opinion as to what had been proven. Although trial judges should avoid references to the additional time and expense of retrial,[14] the instruction in this case, taken as a whole, left the decision up to the jury and was not so coercive such that a reversal is required.[15]

5. Mickens next contends that his trial counsel was ineffective for (a) failing to raise a hearsay objection to expert testimony based on reports prepared by others,

---

[13] (Punctuation omitted.) *Scott v. State*, 290 Ga. 883, 888 (6) (725 SE2d 305) (2012).

[14] See *Taylor v. Murray*, 102 Ga. App. 145, 148 (2) (115 SE2d 776) (1960).

[15] See *Blige v. State*, 205 Ga. App. 133, 133-134 (1) (421 SE2d 547) (1992). Compare *Riggins v. State*, 226 Ga. 381, 384 (3) (174 SE2d 908) (1970) (trial judge improperly instructed the jury as follows: "[I]it occurs to me that somebody is being a little unreasonable, stubborn. I don't see how any jurors – as intelligent as any jurors we could get – and it's a very expensive operation to hold these trials for a week at a time and the jury ought to be able to reach a conclusion based on the evidence and by a preponderance of the evidence. I mean – on the evidence from the standpoint of a reasonable doubt.") (punctuation omitted).

(b) failing to raise a best evidence objection, (c) failing to object to juror's questions of a witness, and (d) deficiently examining one of the State's witnesses.

Under *Strickland v. Washington*,[16] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[17] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case."[18] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[19] In reviewing the trial court's decision, "[w]e

---

[16] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[17] See id. at 687-688, 690-694 (III) (A)-(B).

[18] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[19] See *Strickland*, supra, 466 U. S. at 697 (IV); *Fuller v. State,* 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

11

accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[20]

(a) *Failing to object to raise a hearsay objection to expert testimony about reports prepared by others*. Mickens argues that his trial counsel should have objected on hearsay grounds to testimony from a GBI witness who testified as to her review of the forensic work done by outside laboratories.[21] The witness explained her review of analyses (i) for the presence of seminal fluid and spermatizore and (ii) developing a DNA profile. She explained that based on her knowledge of the labs' testing procedures, the test were scientifically acceptable, and she had independently peer reviewed the data generated in the reports to reach her conclusions. Such expert

---

[20] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

[21] Mickens made no argument on motion for new trial or on appeal based on a Confrontation Clause violation, which is distinct from a hearsay challenge. See *Sanders v. State*, 290 Ga. 445, 448 (3) (721 SE2d 834) (2012); *Higginbotham v. State*, 287 Ga. 187, 189 (3) (695 SE2d 210) (2010). Accordingly, any potential Confrontation Clause violation is waived, and we need not address that basis for an ineffective assistance claim. See id.

testimony has been held to be admissible, so we discern no harm in trial counsel's failure to object here.[22]

(b) Mickens contends that his trial counsel should have objected to photographs of the testing kit under the "best evidence rule."[23] But "[t]he State is not required to produce at trial physical evidence about which witnesses have testified, [and t]he 'best evidence rule' applies only to writings."[24] Accordingly, any objection would have been meritless, and "[c]ounsel's failure to make a meritless objection does not constitute deficient performance."[25]

(c) Mickens also questions his trial counsel's failure to object to certain questions posed by jurors to witnesses. But when asked about this at the motion for new trial hearing, trial counsel responded that

---

[22] See *Rector v. State*, 285 Ga. 714, 715 (4) (681 SE2d 157) (2009); *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009). Compare *Neal v. Augusta-Richmond County Personnel Bd.*, 304 Ga. App. 115, 118 (1) (695 SE2d 318) (2010) (finding testimony was hearsay because it was a mere conduit for results prepared by others; collecting cases in which expert peer review testimony was admissible).

[23] See OCGA § 24-5-4 (a).

[24] (Citation omitted.) *Dixon v. State*, 179 Ga. App. 278, 279 (2) (346 SE2d 93) (1986). Accord *Kraus v. State*, 169 Ga. App. 54, 56 (2) (a) (311 SE2d 493) (1983).

[25] *Durrence v. State*, 287 Ga. 213, 218 (2) (a) (695 SE2d 227) (2010).

13

[i]f I'm right, it may have started off with a juror saying that she could not hear . . . something like that during an answer. And I remember [the judge] then allowing her to ask directly about that. And you know, . . . she just started asking questions. And he stopped her. Because she was becoming lawyer-like in the questioning. . . . I don't remember the questions as being something that . . . was detrimental to our case. [Deciding not to object] would have been a trial strategy. . . . I'm not sure that I even thought it was something that . . . could have led to a mistrial.

The juror's questions were essentially cumulative of prior testimony, and not wanting to object to a juror's questions is a reasonable trial strategy in light of the trial court's intervention and the risk that objecting would put counsel in a role adverse to the juror. "Informed strategic decisions do not constitute ineffective legal assistance,"[26] so this ground fails to support Mickens's claim.

(d) Mickens finally challenges the effectiveness of his trial counsel's cross-examination of the detective who took his mouth swab and was responsible for much of the chain of custody evidence with respect to the swab. Mickens points out that his trial counsel was able to elicit inconsistent statements from the witness as to whether she personally initialed the sealed swabs at the time she collected them from Mickens.

---

[26] *Phillips v. State*, 277 Ga. 161, 163 (b) (587 SE2d 45) (2003).

But equivocation would only help his challenge to the chain of custody, and as such, the challenged cross-examination fails to demonstrate that there is a reasonable probability that the trial result would have been different if it had been performed differently.

6. Finally, Mickens contends that the evidence was insufficient to support the conviction. Nevertheless, as noted above, the evidence showed that Mickens's DNA matched that of J. O.'s attacker, and there was further testimony that his DNA profile would occur in his race group once out of 200 quadrillion people. Further, there was similar transaction evidence showing that Mickens had comitted another rape of an exotic dancer late at night in his car on a public street. When reviewing the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal

conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[27]

Under this standard, the evidence sufficed to support Mickens's conviction.

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[27] (Emphasis in original; citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).