**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 19, 2014**

# In the Court of Appeals of Georgia

A14A0123. O'ROURKE v. THE STATE.

RAY, Judge.

Following a jury trial, Shawn Patrick O'Rourke was convicted of two counts of child molestation (OCGA § 16-6-4 (a) (1)).[1] He appeals from his convictions and the denial of his motion for new trial, contending that the trial court erred (i) in denying his special demurrer as to one of the child molestation counts, and (ii) in admitting certain evidence at trial. O'Rourke also challenges the sufficiency of the evidence. For the following reasons, we affirm.

---

[1] O'Rourke was found not guilty of aggravated child molestation (OCGA § 16-6-4 (c)).

Viewed in the light most favorable to the verdict,[2] the evidence showed that O'Rourke was the live-in boyfriend of the victim's mother. On the morning of June 25, 2010, O'Rourke went into the bedroom of the 9-year-old victim, D. C., while she was still sleeping. At trial, D. C. testified that O'Rourke woke her up, told her to remove her shorts, positioned her on the bed, and "put his private in [her] butt." D. C.'s testimony was corroborated by her brother, who testified that, while walking down the hallway towards the bathroom, he looked through a hole in D. C.'s bedroom door and observed O'Rourke standing at the edge of the bed and D. C. on top of the bed, bent over on her knees with her naked buttocks in front of O'Rourke. The brother further testified that he heard O'Rourke unzip his pants, that both O'Rourke and D. C. were "kind of moving," that O'Rourke was moving his body "back and forth," and that D. C. was saying "no" and crying. Based on his observations, the brother testified that he believed O'Rourke was raping D. C.

D. C.'s brother then contacted their mother at work and told her what he had seen. Shortly after arriving at the house, the mother took D. C. to the hospital to be examined. While at the hospital, D. C. was briefly interviewed by Detective Frank Chisholm of the Savannah-Chatham Metropolitan Police Department. D. C. told

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

Detective Chisholm that O'Rourke had come into her bedroom that morning to administer some medication and that he made her "get on all fours like a dog." D. C. stated that she heard a "rubber pop" before he put his private part in her butt and that he stopped when they heard a noise at her bedroom door. The results of the subsequent sexual assault examination indicated that there were no visible signs of trauma in or around D. C.'s genital area.

Detective Chisholm also briefly interviewed D. C.'s brother while at the hospital. The brother stated that, when he heard a muffled "no, no, no" coming from D. C.'s bedroom, he peeked through a hole in her bedroom door and saw D. C. on all fours with her face in her pillow and O'Rourke standing behind her. The brother stated that he then heard the sound of a zipper.

Based on the children's statements, Detective Chisholm obtained a search warrant for D. C.'s residence. While executing the search warrant, the police took various photographs of the residence and removed bed sheets and items of clothing from D. C.'s bedroom for forensic analysis. Seminal fluid containing sperm was found on one of the bed sheets and subsequent testing showed that it contained DNA that matched that of O'Rourke.

Detective Chisholm again interviewed D. C. at an advocacy center.[3] During this interview, D. C. stated that O'Rourke began molesting her by touching her buttocks sometime in early December 2009, although she could not recall the specific date. She also gave a consistent account of the molestation that occurred on June 25, 2010. At trial, D. C. testified that O'Rourke had "put his private in [her] butt" on at least five other occasions before June 25, 2010, but she could not provide any specific dates.

In an interview with the police,[4] O'Rourke denied molesting D. C., but he admitted that on previous occasions he had applied medicine to her legs and buttocks to treat pimples or "sweat bumps." With regard to the incident that occurred on June 25, 2010, O'Rourke stated that he was putting medicine on D. C. at the time that her brother was looking through the hole in the bedroom door, and that "it must not have looked right from where he was looking, . . . what he saw did not register in his head right."

---

[3] The videotape of this interview was played for the jury, but its contents were not transcribed. However, we have reviewed the video in its entirety for the purposes of this appeal.

[4] The videotape of this interview was played for the jury and was transcribed.

After the interview, O'Rourke went to visit his friend, William Murphy. O'Rourke told Murphy that he had just been interviewed by the police regarding the accusations of molestation. At trial, Murphy testified that O'Rourke told him that he had masturbated behind D. C. while he was putting medicine on her and that he was pretty sure that the police were going to find his DNA. Murphy also testified that O'Rourke admitted that he had used the excuse of putting the medicine on D. C. in order to see her naked and to engage in sexual activity.

O'Rourke was subsequently charged with two counts of child molestation and one count of aggravated child molestation. After a jury trial, O'Rourke was convicted on the child molestation counts, and this appeal ensued.

1. O'Rourke contends that the evidence was insufficient to sustain the verdict. We disagree.

> When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense[s] beyond a reasonable doubt.

(Citations omitted.) *Craft v. State*, 324 Ga. App. 7, 7-8 (749 SE2d 16) (2013).

OCGA § 16-6-4 (a) (1) provides that "[a] person commits the offense of child molestation when [he] . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of . . . the person."

Count 1 of the indictment charged O'Rourke with child molestation for removing D. C.'s pants and underwear on June 25, 2010, with the intent to arouse and satisfy his sexual desires. Based on D.C.'s testimony that O'Rourke told her to remove her underwear and then placed his "private in [her] butt," the corroboration testimony of D. C.'s brother, Murphy's testimony that O'Rourke had admitted to masturbating behind D. C.'s naked body, and the fact that seminal fluid and sperm matching O'Rourke's DNA profile were found on D. C.'s bedsheet, we find that the evidence is sufficient for the jury to have found beyond a reasonable doubt that O'Rourke committed the offense of child molestation as alleged in Count 1.

Count 2 of the indictment charged O'Rourke with child molestation for touching D. C. on the buttocks during the period between December 1, 2009, and June 25, 2010, with the intent to arouse and satisfy his sexual desires. D. C. testified that, in addition to the sexual abuse that occurred on June 25, 2010, O'Rourke had "put his private in [her] butt" on several previous occasions. Although D. C. was

6

unable to specify the dates upon which these acts occurred, D. C. stated during her forensic interview that O'Rourke began molesting her in December 2009.

O'Rourke argues that the evidence was insufficient to support his conviction on Count 2 because D. C.'s trial testimony concerning the sexual abuse that occurred before June 25, 2010, all involved acts of anal sodomy and the jury found him not guilty of the aggravated child molestation that was alleged to have occurred on June 25, 2010 (Count 3 of the indictment). . We find this argument to be unpersuasive.

The fact that O'Rourke was found not guilty of anally penetrating D. C. on June 25, 2010, has no bearing on the sufficiency of the evidence supporting the guilty verdict on the separate offense of child molestation charged in Count 2. See generally *Wyley v. State*, 259 Ga. App. 348, 348 (1) (577 SE2d 32) (2003) ("the jury's not guilty verdicts on some offenses have no bearing whatsoever on the sufficiency of the evidence supporting the guilty verdicts on other [separate] offenses"). O'Rourke's argument in this regard relates more to the credibility of D. C. and, thus, is an attempt to challenge the discrepancy between the jury's decision to reject her testimony regarding the act of aggravated child molestation that occurred on June 25, 2010, and to accept her testimony that she had been previously molested by O'Rourke.

7

However, "[i]t is the jury's prerogative to choose what evidence to believe and what to reject." *Trammell v. State*, 253 Ga. App. 725, 726 (1) (560 SE2d 312) (2002).

O'Rourke also argues that the only evidence that he previously touched D. C. inappropriately on the buttocks came from D. C.'s statement during her forensic interview that O'Rourke had "smacked her on the butt" sometime in December 2009. This argument is belied by the record.

In addition to D. C.'s trial testimony that O'Rourke had put his penis in her butt on several previous occasions, O'Rourke admitted in his statement to police that he had previously touched D. C.'s buttocks to apply medication to her bumps, and he later admitted to his friend, Murphy, that he had used the excuse of putting medicine on D. C. to arouse his sexual desires or to engage in sexual activity. Whether O'Rourke touched D. C.'s buttocks in this manner with his hands and fingers or with his penis as testified to by D.C., we find that, under either scenario, such evidence is sufficient for the jury to have found beyond a reasonable doubt that O'Rourke committed the offense of child molestation as alleged in Count 2.

2. O'Rourke contends that the trial court erred in overruling his special demurrer as to Count 2 of the indictment because the State presented no evidence

showing that it could not more specifically identify the date of the offense. We find no reversible error.

> Generally, an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer. However, where the State can show that the evidence does not permit it to allege a specific date on which the offense occurred, the State is permitted to allege that the crime occurred between two particular dates.

(Punctuation and footnotes omitted.) *State v. Layman*, 279 Ga. 340, 340-341 (613 SE2d 639) (2005). However, the exception to the specific-date requirement is not applicable where the State fails to present evidence to the trial court to show that the State is unable to identify the specific date on which the offense occurred, as, for example, when the victim is a child who is incapable of adequately articulating exactly when the offense occurred. *Blackmon v. State*, 272 Ga. App. 854, 854-855 (614 SE2d 118) (2005).

In Count 2 of the indictment, the State alleged that O'Rourke molested D. C. "between December 1, 2009, and June 25, 2010," by touching her on the buttocks with the intent to arouse and satisfy his sexual desires. To show that it was unable to identify specific dates, or to narrow the range of dates, the State relied on its response

9

brief to the special demurrer. In its brief, the State argued that the date range in Count 2 of the indictment was based on the recorded statement of D. C., which had been previously provided to O'Rourke, in which she stated that the molestation began in December 2009 and ended on July 25, 2010. Her statement also indicates that, other than the last incident, she was unable to provide any specific dates for the acts of molestation that occurred within that date range.

Citing *Mosby v. State*, 319 Ga. App. 642 (738 SE2d 98) (2013), O'Rourke argues that the State was required to present evidence to show that it was unable either to identify a specific date on which an offense occurred or to narrow the range of possible dates, and that the State could not meet this burden by merely relying upon the argument in its brief. Id. at 643-644 (1). O'Rourke's reliance on *Mosby* is misplaced.

In *Mosby*, the defendant pointed out to the trial court that he was entitled to an evidentiary hearing on his special demurrer and called upon the State to present evidence to show that it was unable to narrow the date range in the indictment. The State chose not to present any evidence, and it relied only on its argument that child victims, in general, often cannot provide the precise date of an offense, and that

children sometimes cannot remember exact dates. Id. at 644 (1). Based on those facts, we found that the trial court erred in overruling the defendant's special demurrer.

Here, however, the record indicates that O'Rourke agreed to have the trial court rule on his special demurrer based on the parties' respective briefs, without the necessity of an evidentiary hearing. "A party cannot participate and acquiesce in a trial court's procedure and then complain of it." (Citation omitted.) *Davis v. Phoebe Putney Health Systems, Inc.*, 280 Ga. App. 505, 506 (1) (634 SE2d 452) (2006); *Williams v. State*, 277 Ga.App. 106, 108 (2) (625 SE2d 509) (2005) ("We are a court for the correction of errors of law committed by the trial court where proper exception is taken, and we will not consider issues and grounds for objection, even of a constitutional magnitude, which were not raised and determined in the trial court") (footnote omitted). Furthermore, unlike in *Mosley*, the State's argument concerning its inability to specify an exact date for the offense or to narrow the date range was based on specific evidence that both parties had in their possession, albeit not tendered to the trial court, that clearly showed that D. C. was unable to specify any exact dates within the date range that she provided for the offense alleged in Count 2 of the indictment.

11

To the extent that the State nevertheless was required to introduce such evidence at a hearing, its failure to do so in this case does not warrant reversal. In a post-conviction appeal of a trial court's pre-trial ruling denying a special demurrer, we apply a "harmless error" standard of review. *Howard v. State*, 281 Ga. App. 797, 799 (1) (637 SE2d 448) (2006). Accord *Blackmon*, supra at 855. There is nothing in the record to indicate that the State could have narrowed the dates in Count 2 any further. Having reviewed all of the evidence, we conclude that O'Rourke was not surprised or otherwise prejudiced by any alleged deficiency in Count 2 of the indictment.

3. O'Rourke contends that the trial court erred in admitting State's Exhibit 9, the bed sheets upon which the DNA evidence was found, over his chain of custody objection. We disagree.

> Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not negate every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence.

(Footnote omitted.) *Mickens v. State*, 318 Ga. App. 601, 602 (1) (734 SE2d 438) (2012).

At trial, Corporal Dennis Malott testified that, after collecting two sets of bed sheets from D. C.'s residence, he placed each set of bed sheets into a separate evidence bag, and stapled and signed each bag before placing the two bags into a larger bag that was marked and sealed. He testified that he placed the sealed bag into the police department property room, where it remained until it was sent to the GBI crime lab for forensic analysis.

Robert Busam, a forensic biologist with the GBI crime lab, testified that he received the sealed bag containing the two bags of bed sheets and that it did not appear to have been opened prior to his receiving it. Busam further testified that the evidence bags that were inside the larger bag "did not appear to be opened or tampered with."

Corporal Malott identified the bed sheets in State's Exhibit 9 as the same sheets he recovered from D.C.'s bedroom. He acknowledged that the evidence bag containing these sheets had been opened and resealed twice before trial, first by the GBI crime lab for testing and then later by Malott, himself, to review the evidence

13

with the prosecutor just prior to trial. He further testified that the staples that he had originally used to close the evidence bag were still intact and had not been removed.

O'Rourke argues that, because the evidence bag containing the bed sheets at issue was stapled rather than sealed, the State cannot show with reasonable certainty that the evidence has not been tampered with. However, "[w]hen there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight." (Footnote omitted.) *Mickens*, supra.

Here, the testimony offered at trial confirmed that the bed sheets had been packaged separately, that each bag had been securely stapled shut and placed in a larger bag that was properly identified and sealed, that the larger bag remained sealed until it arrived at the GBI, and that the evidence bag at issue had been properly handled thereafter. There was no evidence of tampering or contamination. In light of the record before us, we discern no error in admitting State's Exhibit 9.

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur.*